Ruffin, C. J.
 

 The act of 1836, Rev. St. ch. 34, s. 1, introduced for the first time, the term “store-house,” into the statute book, and accompanies it with two explanatory words to shew precisely to what particular building the Legislature meant to apply it. Having, previously, no legal signification, as a term of art, it must, of course, be understood in its general sense, given to it as a word in our language in approved dictionaries. In that way we find it to be defined, “ a building for keeping grain or goods of any kind, a repository, a ware-house which signification clearly covers the plac.e in this case, and, indeed, much more, and even more, perhaps, than was actually in the mind of the writer of the act. For we believe, the word is vulgarly used in different senses, and perhaps, not exactly alike in different parts oí the country. A common use of it is, to designate a building, in which domestic supplies are kept at a place of residence. — t It is also applied to places of business, and is there vulgarly used ,ss synonymous with “ shop” in one of iis proper
 
 *574
 
 senses, meaning a building in which goods are offered openly for sale. It is probable the Legislature had in view a building of the latter character, since one of the former kind would probably in most cases be protected as “ part of the dwelling house,” mentioned in the previous part'of the sentence. If such was the intention, it is to be regretted that the term “shop” had not been adopted, as having an established legal meaning. But as another term was chosen, it is the duty of the court to execute the act accordingly, and it cannot be doubted that “ store-house,” both in its proper senseand according to a common acceptation of .it, embraces the building here burnt.
 

 The determination of the preceding point goes far in deciding also that the ownership was properly laid to be in Cowan. It was certainly not a part of McKeller’s house, in legal contemplation. There was no communication between this and the other parts of the building, and they were severed by being employed for different purposes, and occupied by different persons, as their own for the time. The several portions thereby became distinct properties and houses, for the purposes of constituting the crimes of burglary or arson, as much so as if they had not been under the same roof. 1 Hawk. c. 38, s. 34. East. P. C. 504.
 

 The next objection is nothing at all, being no more than a question, whether burning is burning. It is stated in the case, that the floor of the building was charred to the depth of half an inch. The definition of “char,” is to reduce wood to a coal by burning. Therefore the crime was complete here, for although to constitute arson there must be a burning of the house, and not merely something that is in it, yet the least burning of the building is sufficient. The opinion of the court therefore is, that the conviction was right.
 

 But the court is likewise of opinion, that there cannot be judgment on this indictment, because it concludes “ against the form of the statutes,” while the offence depends on but a .single statute. We think it settled, that when the offence depends on more than one statute, the conclusion
 
 contra
 
 
 *575
 

 formam statuti,
 
 is bad, and in like manner, that a sion
 
 contra formam slatuiorum
 
 is bad, when there is but one statute. The iormer proposition is not susceptible oí dispute, but all seem agreed in it.
 
 Broughton
 
 v
 
 Moore,
 
 Cro. Jac. 144. 2 Hale 173.
 
 State
 
 v
 
 Jim,
 
 3 Murph. 3.— The reason is, that the party has a right to know the law against which, it is alleged, he has offended. Hence if the indictment be given by a statute, it must conclude against the statute, otherwise it is at common
 
 law;
 
 and if the party be not punishable by that law, there can be no judgment against him. So, with reference to offences depending on more than one statute, the indictment must be” varied in the conclusion, to suit the truth. For, anciently, the pleadings recited the statute or statutes, and, of course, the necessity which caused the recital of the one,- when there was but one, would likewise require the recital of all, when there were more than one. Afterwards-, the general conclusion,
 
 contra formam
 
 &c., was received instead of the recital— But it is manifest, that the reference to the statute or statutes in the general conclusion ought to correspond to the recital or recitals, for which it was substituted. Hence, as has been already stated, it is clear law, that a conclusion,
 
 contra
 
 for-
 
 mam statuti,
 
 is bad, when there are two or more statutes, and the conclusion ought to be,
 
 contra form,am slatutorum.
 
 It thus appears, that the conclusion against the statute or statutes is of the substance of an indictment or declaration, as has beeen indeed recognised in the other cases in this State, besides that before cited.
 
 Scroter
 
 v
 
 Harrington,
 
 1 Hawk 192.
 
 State
 
 v
 
 Muse,
 
 4 Dev. & Bat. 319. And it further appears, that those two forms of conclusion are substantially different, since the use of the word in the singular will not do, when it should be in the plural. Now, it would seem to follow necessarily, that
 
 vice versa, statorum
 
 will aot do, when it should be
 
 stahiti.
 
 For if, by the conclusion in the singular, it is to be understood, that the accused is charged'but on one statute, so, when the conclusion is in the plural, it is affirmed that he is charged on more than
 
 *576
 
 one, and they should be shewn accordingly. But it was said, that as this conclusion may be rejected, when there is no statute, and the offence is at common law, so by parity of reason may a conclusion in the plural be rejected as sur-plusage, when it' should be in the singular. This position is entitled to the more respect from being sanctioned by Judge Story in
 
 Kenrick
 
 v
 
 United States.
 
 1 Gallis. Rep. 263. The answer to it is the dissimilarity of the cases. If, indeed, the statutes were recited at large,■ and one of them fully gave the action and the other had nothing to do with the subject, the latter might perhaps be disregarded, because there would be enough still on the reeord to authorize judgment, and
 
 utile per inutile non vitiatur,-
 
 in the same manner as when an indictment for a common law offence concludes against a statute. But when the statutes are not recited, but there is merely the conclusion,
 
 contra formam
 
 &c., that in the plural cannot be received’ as the substitute for one in the singular, because the two conclusions are essentially different in meaning, and the one is so opposed to the other as to be incapable of such a modification as being turned into the other; and, furthermore, because the conclusion in the plural cannot be treated as surplusage, since, if stricken out, the indictment would fail, without inserting in its plae'e the word statuti, for which there is no authority. While a reference to the statutes is deemed of the substance of pleading, it would seem upon principle, that the conclusion must be in the singular or plural accordingly as the of-fence may depend on one or more statutes. And we think it equally well supported by authority. That a conclusion
 
 contra formam statutorumis
 
 not good, when there is but one statute, though not the point adjudged, was laid down by the court in
 
 Andrew
 
 v
 
 The Hundred of Lewkner,
 
 Yelv. 116, is quoted thence without a question by Sergeant Hawking, P. C. 1, B. C. 25, S. 117, and is repeated without qualification, and as clear law, not needing the support of authorities, by Sergeant Williams. 2 Saund. 377, note 12; besides being thus stated by subsequont text-writers. It might perhaps have been well, if the distinction had never
 
 *577
 
 been allowed; and it is obvious, that it was never in much favor, for the courts tolerated an evasion of the rule, by permitting, when the proceedings were in latin, a contraction, thus,
 
 contra formam statut.,
 
 and construing it to be
 
 statuti
 
 or
 
 statutorum,
 
 as the one or the other happened in each case to be proper. It might have been more creditable to have abolished at once a form of pleading thus readily dispensed with. But it is certain that, after the subterfuge was taken away by the pleadings being turned into English, the rule yet remained in full force in England, until within a very recent period. It is only by the Stat. 7 Geo. 4 c. 44-5, s. 20, that it was enacted, “that judgment shall not, after verdict, be stayed or reversed for the insertion of the words “ against the form of the statute,” instead of the words. “ against the form of. the statutes,” or
 
 vice
 
 versa-.” This statute of itself furnishes cogent proof- of the law, as it stood ante-cedently. Until a similar one shall be enacted here, however; our courts must recognize and enforce the rule as found at the common law. But this case may, perhaps, be turned to profitable account by again attracting attention to the subject, as one proper for legislative consideration.
 

 Per Curiam. Judgment arrested.