Daniel, J.
 

 The act of assembly was first passed in the year 1830, ch. 41, and was as follows: “That if, at any time hereafter, any person or persons shall wilfully
 
 and
 
 maliciously burn the State house, or any of the public offices of this State, or any court house, jail, &c., he or they shall be deemed guilty of felony.” When the acts of the General Assem-^ bly came to be revised, by some mistake the word
 
 or
 
 was inserted in the statute, in the place of the conjunction
 
 and.
 
 And it may be, that this was the reason, that induced the judge to decline to charge the jury, as he had been requested by the prisoner’s counsel. The first branch of the clause in the statute, as it now stands, had been literally violated by the prisoner ; he had
 
 wilfully
 
 burnt the jail. But we think that the word or, to effectuate the intention of the legislature, and in favor of life, must be construed as if it were
 
 and.
 
 And, before the prisoner should have been convicted, the jury should have been satisfied, that he not only wilfully put fire to the jail, but that he did it likewise maliciously, with an evil and wicked intent to destroy and consume the jail by the means of fire, if it was not the intention of the prisoner to burn down and destroy the jail, but he put fire to the lock to bum it off, merely to effect his escape, and not to destroy th$
 
 *352
 
 jail, the felony was not completed. The case cited by the prisoner’s counsel,
 
 The People
 
 v.
 
 Cotteral,
 
 18 Johns. Rep. 115, is an authority for this position. We therefore think, t[la( tjje judge erred in refusing to charge, as he was requested by the prisoner’s counsel. But we will say, that if the prisoner wilfully put fire to the jail, with the intent to effect his escape, by consuming or destroying it, he would be guilty under the statute, if the jury should be of opinion, that his secondary intent was to burn down and destroy the jail, although, his main intent was thereby to effect his escape. This doctrine is supported by the case of
 
 King
 
 v.
 
 Coke
 
 &
 
 Woodburn,
 
 6 State Trials, 212, The primary intent of the prisoners in that case was to murder Mr. Crispe; they terribly hacked him and also disfigured him by slitting his nose with a hedge bill, and they left him for dead. Now the bare intent to murder is no felony; but to disfigure, with an intent to disfigure, is made afelony in England by the Coventry act. The prisoners were indicted under that act, and the court said, it shall be left to the jury, whether it. was not a design to murder by disfiguring, and consequently a malicious intent to disfigure, as well as to murder. The jury found the prisoners guilty of such previous intent to disfigure, in order to effect their principal intent to murder, and they were both convicted and executed. The same doctrine is to be found in the case of the
 
 King
 
 v.
 
 Gillow,
 
 1 Moody’s C. Cases, 85. In an indictment against the statute for cutting and maiming, with intent to do grievous bodily harm, a prisoner was convicted, whose main and principal intent was to prevent his lawful apprehension, which is also an offence against the statute, if, in order to effect the latter intention, he also intended to murder or do grievous bodily harm, &c., which the jury found he did. We have made the above remarks, in order to prevent our being misunderstood, in the construction of our statute on the subject of burning public buildings. General malice is sufficient to satisfy the words of the statute. 1 Moody’s C. Cases, 93.
 

 If the prisoner put fire to the jail, not with an intention of destroying it, ha is not guilty under the act of assembly. But
 
 *353
 
 if he put fire to the jail and burnt it with an intent to burn it down and destroy it, he is guilty, notwithstanding the fire went out, or was put out by others before the intention oí the prisoner was completed by burning down the jail; and this is the law, although his main intention was to escape.
 

 The, two intentions of escaping and oí burning down the jail are perfectly consistent with each other, as both existing in the mind at the same time; as it. may be the purpose of the party to escape by means of burning the jail.
 

 If a person from without set fire to the jail, with the view of enabling prisoners confined in it to escape, the case is clearly within the words and mischief of the act; for it must be against such deeds, upon such an intent, that the enactment was chiefly directed. In like manner, if a prisoner himself set the jail on fire from within, to enable him to escape, the same consequence must follow. And in cases under the statute, as well as in arson at common law, the setting fire to the building constitutes the offence, no matter how little may be burned, provided there was an intention to destroy the building; and such an intention is to be inferred, unless the contrary is clearly established, since fire set to combustible materials will naturally consume them. Therefore,
 
 prima facie,
 
 this prisoner was guilty. But all inference of his guilt is repelled by its being found, or rather assumed by the presiding judge, that he did
 
 not
 
 intend to burn down the jail, but intended to escape by burning a small hole through the door,
 
 and nothing more.
 
 It may be extremely difficult for a prisoner, especially a solitary prisoner, to establish, as he must do affirmatively, that he did not intend to consume the jail, when he set fire to it, but only to burn a slight opening in it. But that difficulty does not lie on this prisoner, according to the case as now appearing, because it is yielded by the State, that he had no such intention. His innocence does not arise from
 
 an
 
 intention of the prisoner having been to escape, but from the intention to escape by means of burning down the jail being expressly negatived; and, therefore, the presumption before spoken of must yield to,the fact found. We speak of
 
 *354
 
 the fact, as found, because the judge told the jury to convict the prisoner, although they might find the fact to be, that he did
 
 not
 
 intend to burn down-the house, orno matter what was his intent.
 

 Per Curiam, Judgment reversed and a
 
 venire de novo.