STATE v. STEWART HALL AND LORENZO SAVAGE.

*Indictment—Arson—Indictment.*

1. The crime of arson was complete at common law by the burning of any part of a house, and a house is burned when it is charred, that is, when any of the wood therein is reduced to coal.

2. As a general rule, an indictment should charge a statutory crime in the words of the statute.

3. Where an indictment under the statute, charged the defendants with unlawfully setting fire to a certain lot of fodder, &c., but did not charge that they burned it ; *It was held,* fatally defective, and the judgment was arrested.

(*State* v. *Sandy,* 3 Ired., 570, cited and approved).

APPEAL from the Inferior Court, heard by *Graves, Judge,* at Spring Term, 1885, of EDGECOMBE Superior Court.

The act of 1875, under which the indictment is framed, declares that any person who shall wilfully burn or destroy any

other person's corn, wheat, barley, rye, oats, buckwheat, rice, to-bacco, hay, straw, fodder, shucks or other produce, in a stack, hill, rack or pen, or secured in any other way out of doors, shall be guilty of a misdemeanor.   The Code, §985, sub-div. 5.   The indictment charged that the defendants "did unlawfully and wilfully set fire to a certain lot of fodder in a stack and out of doors, the property of," &c.

After the trial and conviction in the Inferior Court, a motion in arrest of judgment was made and overruled for insufficiency in describing the statutory offence, and sentence being pronounced, the defendant appealed to the Superior Court, where the motion was sustained, and judgment ordered to be arrested, and from this ruling the State appeals to this Court.

*Attorney General*, for the State.
*Messrs. J. L. Bridgers & Son*, for the defendants.

SMITH, C. J., (after stating the facts).   The only question presented in the record, and which we are required to dispose of, is whether the words "set fire to," contained in the indictment, are of equivalent legal import with the word "burn" used to designate the offence made such in the act.

In examining the seven sub-divisions of the section relating to arson, the first of which only prescribes the punishment of the crime as defined by the common law, it will be observed that "burn" and "burning" are the terms employed in three of them, Nos. 2, 3 and 5; "set fire to and burn," in that num-bered 4; "set fire to" in number 6, and "attempt to burn" in the last.   While it is true that these enactments enlarging the crime of arson were made at different sessions of the General Assembly, they are all associated and re-enacted in their original forms, as found in The Code, and constitute a system.   It must therefore be understood that the variant phraseology retained, rests upon substantial ground, and was not intended to convey one and the same meaning, for if so, why was not the same language used?

The crime of arson is consummated by the burning of any, the smallest part of the house, and it is burned within the common law definition of the offence, when it is charred, that is, when the wood is reduced to coal, and its identity changed, but not when merely scorched or discolored by heat. 2 Whar. Cr. Law, §1659 ; *State* v. *Sandy*, 3 Ired., 570. As the very natural and usual effect of setting fire to combustible matter, is to convert it into coal or ashes, it might seem that the burning is accomcomplished by setting the fodder stack on fire, and that the crime denounced in the statute is sufficiently charged in the indictment to warrant judgment.

And so it is held by the Supreme Court of Maine, that the charge by setting fire to a barn, is a burning under a statute of that State, somewhat similar to ours. DAVIS, J., speaking for the Court, after declaring that actual ignition of any part of the building, though the fire go out at once, is a burning, adds : " It can hardly be contended that setting fire to a building signifies any less." In this case, however, the indictment averred not only that the prisoner set fire to the barn, but that by means of the fire, the barn was burned. The ruling of the Court may be sustained without regard to the *dictum* that the terms are equivalent.

But there have been cases to the contrary, decided in the States, and Blackstone, in the 4th volume of his Commentaries, 222, recognizes the distinction, and uses this language : " As to what shall be a burning, so as to amount to arson, a bare intent or attempt to do it *by actually setting fire to a house, unless it absolutely burns*, does not fall within the description of *incendit et combussit*—set on fire and burn."

In *Harrel* v. *Commonwealth*, 5 Grattan, 664, determined in 1848, the indictment alleged that the prisoner " set fire to a certain house," while the statute used the words " burn any house," &c., and, as in our case, both expressions are found in different sections of the enactment. It was held that the statutory offence was not sufficiently charged.

In *Cochran* v. *State,* 6 Maryland, 400, the same difference existed between the statute and the indictment. LE GRAND, C. J., in delivering the opinion, says: "We have no doubt that the indictment was defective in not averring that the house was burned."

In *Mary* v. *State,* 24 Ark., 44, the Supreme Court arrested judgment after conviction on an indictment for arson, which alleged that the accused " did set fire to a certain dwelling house," but failed to aver that it was " burned."

The form given in Arch. Cr. Pleading, 204, uses these words : " did set fire to *and burn,*" the latter word being wholly surplusage, if those preceding are to have the same meaning without it.

The distinction may appear to be a refinement unworthy to be upheld, but it is safest to follow approved precedents, and it is certainly possible to set fire to some articles, which, by reason of the sudden extinction of the fire, may fail to change by charring even the material to which it has been applied, so that the defendant may have done the act imputed, and yet not *burned* it within the meaning of the act, and if so, no judgment can be rendered against him   This conclusion derives support from the succeeding word "destroy," which indicates the legislative intention in employing the language used to define the offence.

As a general rule, the indictment should charge a statutory crime in the statutory words that define it, which was not followed in the drawing of the present indictment.

We therefore sustain the ruling in the Superior Court, and direct judgment to be arrested.   This will be certified.

No error.                                             Affirmed.