STATE OF NORTH CAROLINA v. RONNIE RAY OXENDINE

No. 92

(Filed 27 January 1982)

1. **Arson § 1— elements of arson**

   In order to constitute arson, some portion of the dwelling itself, rather than its mere contents, must be burned; however, the least burning of any part of the building, no matter how small, is sufficient, and it is not necessary that the building be consumed or materially damaged by the fire.

2. **Arson § 4.1— burning or charring of building—sufficiency of evidence**

   The evidence in an arson case was sufficient for the jury to find that defendant actually burned or charred the structure of an inhabited dwelling where the owner testified that she saw fire and smoke coming from a bedroom and that the house was still "burning, slowly" when the fire truck arrived; the evidence tended to show that the fire was visible from a nearby highway and was responsible for the loosening of electrical wiring in the building; and an officer testified that there were dark or burned patches over the wall, the wallpaper was burned, there was a heavy odor of kerosene, and "the main house was or had been on fire."

3. **Arson § 4.1— evidence that wallpaper burned—charring element of arson**

   Where the evidence discloses that the wallpaper in a dwelling has been burned, it completely substantiates the charring element of arson.

**4. Arson § 5— attempted arson—instruction not required**

The trial court in an arson case was not required to instruct the jury upon the lesser included offense of attempted arson where the State's evidence that parts of the structure of the dwelling in question were burned to the requisite degree to constitute arson was essentially uncontradicted.

**5. Arson § 5— instructions on burning**

The trial court in an arson case was not required *ex mero motu* to instruct the jury that there must be a partial burning or slight charring of some portion of the building to constitute arson and that a mere scorching or discoloration thereof is not arson where uncontraverted evidence showed that the house itself had been burned, including several patches on one wall and some wallpaper, defendant relied on an alibi defense and no serious question concerning the nature of the damage caused by the fire was raised during the trial.

**6. Arson § 5— burning of personal property not arson—instruction not required**

The trial court in an arson case did not err in failing *ex mero motu* to instruct the jury that the burning of personal property within the dwelling did not constitute arson where the court in its instructions stressed that the dwelling house or the building itself had to be burned to constitute arson.

**7. Criminal Law § 75.10— confession—waiver of constitutional rights—voluntariness**

The evidence presented at a voir dire hearing supported a determination by the trial court that defendant knowingly waived his constitutional rights at an in-custody interrogation and voluntarily made a subsequent statement to law officers.

**8. Criminal Law §§ 76.10, 146.1— attack upon admissibility of confession—theory not raised in trial court**

The appellate court will not entertain a theory of attack upon the admissibility of defendant's confession which is different from that specifically advanced by defense counsel at trial.

ON appeal as a matter of right from the judgment of *Small, J.*, entered at the 23 February 1981 Criminal Session, ROBESON Superior Court, imposing a life sentence for defendant's conviction of arson. Defendant was also convicted of the felonious burning of a building, and the trial court imposed a judgment of ten years' imprisonment. Defendant's motion to bypass the Court of Appeals, for review of his additional conviction, was allowed on 4 August 1981.

Defendant was charged in separate indictments, proper in form, with arson, the unlawful burning of a building and willful and wanton injury to real property in violation of G.S. 14-58, 14-62, and 14-127. Defendant pleaded not guilty to all of the charges.

In brief and pertinent part, the State's evidence, which included defendant's pre-trial confession, tended to show that defendant engaged in unlawful incendiary activities at the home and property of his aunt, Miss Pyree Locklear, on 9 December 1980. Miss Locklear and her minor son were in the house when defendant set it aflame using kerosene (after breaking out a window with an oak stick). Defendant also ignited an outbuilding used for storage. The fire in the house was quickly contained; however, the outbuilding and its contents were consumed by the blaze.

Defendant presented an alibi defense. He said that he was in bed at his home at the time the fire began. His mother corroborated his alibi. Defendant further stated that he had not been on his aunt's property at any time within the past two years. [Defendant had been previously convicted for trespassing at his aunt's residence.] With respect to his confession, defendant denied that he had admitted his guilt of these crimes, or made any incriminating statement regarding the incident, to the investigating officer. Among other things, defendant said that he was intoxicated when he was being questioned and that he did not understand the explanation of his constitutional rights.

Upon presentation of all of the evidence, the jury found defendant guilty of arson and felonious burning of a building.

The facts shall be further summarized in the opinion to the extent required by our review and discussion of defendant's specific assignments of error.

*Attorney General Rufus L. Edmisten, by Assistant Attorney Generals Thomas B. Wood and Robert G. Webb, for the State.*

*Assistant Appellate Defender Malcolm R. Hunter, Jr., for defendant-appellant.*

COPELAND, Justice.

Defendant argues five assignments of error which he believes require either a reversal of his arson conviction or a new trial. We disagree and affirm.

Defendant first contends that the trial court erred in overruling his motion to dismiss the arson charge. It is well established that a successful arson prosecution requires proof that defendant

maliciously and willfully burned the dwelling house of another. *State v. White*, 288 N.C. 44, 215 S.E. 2d 557 (1975); *State v. Arnold*, 285 N.C. 751, 208 S.E. 2d 646 (1974). In the instant case, defendant challenges the sufficiency of the State's evidence upon the "burning" element of the offense. He complains that the evidence adduced against him was too meager to convince a rational trier of fact that he actually *burned* the *structure* of an inhabited dwelling. Under the circumstances of this case, defendant's position is indefensible.

[1, 2]   The law is clear that some portion of the dwelling itself, in contrast to its mere contents, must be burned to constitute arson; however, the least burning of any part of the building, no matter how small, is sufficient, and it is not necessary that the building be consumed or materially damaged by the fire. *State v. Mitchell*, 27 N.C. 350, 353 (1845); *State v. Sandy*, 25 N.C. 570, 574 (1843); *see* Annot., "Burning as element of offense of arson," 1 A.L.R. 1163, 1166 (1919). The accepted legal definition of "burning," for purposes of an arson case, is best stated in *State v. Hall*, 93 N.C. 571, 573 (1885):

> The crime of arson is consummated by the burning of any, the smallest part of the house, and it is burned within the common law definition of the offense when it is charred, that is, when the wood is reduced to coal and its identity changed, but not when merely scorched or discolored by heat.

Applying these principles to the case at bar, we hold that the State's evidence was sufficient to authorize a reasonable conclusion that the building in question had been *burned*.

Miss Locklear, owner of the dwelling, testified that, after hearing her son exclaim, "Fire!", she went into the bedroom "where the fire was at" and saw fire and smoke coming out of it. She said that the house was still "burning, slowly" when the fire truck arrived. [By this time, Miss Locklear and four of her neighbors had essentially doused the blaze.] Miss Locklear further stated that, during the fire, the "current had burned loose" in the house.[1] Myrtle E. Blanton testified that she drove by the Locklear house on 9 December 1980 and saw "a fire and a lot of smoke." Mrs. Blanton then commented to defendant, who was riding with

---

1. The witness was obviously referring to some type of electrical wiring in the building.

her on the way to the bus station, "your Aunt's house is on fire, everything she owns is burning up."[2] From the testimony of these two witnesses alone, one could reasonably infer that the fire inside the house was substantial enough to cause *at least some charring* of the structure, since the fire was accompanied by a great deal of smoke, was visible from the outside (the highway) and was responsible for the loosening of electrical wiring in the building. *See State v. Hall, supra,* 93 N.C. at 573. *See also State v. Mitchell, supra,* 27 N.C. at 353 ("fire set to combustible materials will naturally consume them").

[3] Nevertheless, the State's case upon this essential element was further strengthened by the testimony of Officer William Halstead who described the subsequent condition of the residence as follows: "the curtains were burned and there was dark or burned patches over the wall; the wallpaper was burned and there was a heavy odor of kerosene. Smoke was throughout the house. . . . [T]he main house was or had been on fire." Surely, this evidence plainly showed that the dwelling itself, and not merely something in it (the curtains), had been burned. It is difficult to perceive how dark, *burned* patches could appear on a wall absent the prior incidence of at least minor charring of that wall's substantive material. Defendant's additional argument that the presence of burnt wallpaper in the dwelling had no rational tendency to indicate the charring of the building's structure simply defies good sense and logic. Wallpaper affixed to an interior wall is unquestionably a part of the dwelling's framework.[3] If the wallpaper is burning, it would perforce suggest that the house is also burning. Hence, we hold that where, as here, the evidence discloses that the wallpaper in a dwelling has

2. We note that defendant's only reaction to this stimulus, according to Mrs. Blanton, was his response, "[s]he ain't no Aunt of mine." He did not even look in the direction of the fire but "just kept staring straight ahead."

3. Once it is affixed to the house, wallpaper is generally immovable and permanently attached thereto and as such becomes part of the realty. For definitions of fixtures, real estate and real property, *see* Black's Law Dictionary 574, 1096, 1137 (5th ed. 1979); Ballentine's Law Dictionary 480, 1059 (3d ed. 1969). *See also* 1 Thompson on Real Property §§ 6, 55 (Grimes ed. 1980).

been *burned,* it competently substantiates the charring element of arson. *Compare State v. Kelso,* 617 S.W. 2d 591, 594 (Mo. App. 1981), where the Court, in dictum, recognized that, although the mere scorching or discoloration of wallpaper on a wall did not constitute arson, arson would certainly occur if the fire spread to the wooden structure no matter how small the damage.

Considering all of the foregoing evidence in the light most favorable to the State with the benefit of every reasonable inference, it was sufficient to permit the jury to find that defendant burned (charred) parts of his Aunt's house to the necessary degree. Contrary to defendant's position, the State's witnesses were not required to use the specific legal term "charred" in describing the structural damage caused by the unlawful fire. In commonly understood language, the witnesses testified that the *house* had been on fire and that parts of it had been *burned.* In his inculpatory statement to the police, even defendant described the progress of the fire, which he "had started *on* the front of the *house,*" in terms of how well it was *burning.* In fact, the sufficiency of the burning element of the offense was never contested at any time during the trial of this case. Defendant relied entirely on an alibi defense. Thus, the real question here was not whether Miss Locklear's house was unlawfully burned, but whether defendant unlawfully set that fire.

[4] Next, defendant contends that the trial court should have instructed upon the lesser included offense of attempted arson. A trial judge is required to instruct upon a lesser included offense, even absent a special request therefor, if there is some evidence in the record which supports the less serious criminal charge. *State v. Redfern,* 291 N.C. 319, 230 S.E. 2d 152 (1976); *State v. Riera,* 276 N.C. 361, 172 S.E. 2d 535 (1970); *see, e.g., State v. Green,* 298 N.C. 793, 259 S.E. 2d 904 (1979). It necessarily follows then that the judge is not obligated to give such an instruction if the record is devoid of evidence which might convince a rational trier of fact that defendant was at most guilty of the less grievous offense. *State v. Wright,* --- N.C. ---, 283 S.E. 2d 502 (1981); *State v. Gadsden,* 300 N.C. 345, 266 S.E. 2d 665 (1980). Such is the case here. We have already determined, *supra,* that the State's evidence that parts of the dwelling's structure were burned to the requisite legal degree was essentially *uncontradicted.* The

crime of arson was, therefore, plainly consummated. That being so, the evidence in the instant case could not be reasonably interpreted as *also* showing the commission of a mere attempted arson. *State v. Moore,* 300 N.C. 694, 700, 268 S.E. 2d 196, 201 (1980). In sum, once the jury believed beyond a reasonable doubt that defendant maliciously and willfully perpetrated these unlawful incendiary deeds, it could only properly return a verdict of guilty of arson.

Defendant also argues that the trial court's final charge to the jury was deficient in two other respects: (1) the omission of a legal definition of burning (as it is stated in *State v. Hall, supra,* 93 N.C. 571) and (2) the absence of a direct admonishment that the burning of personal property within the dwelling did not constitute arson. We hold that defendant was not entitled upon this record to additional instructions absent specific and timely requests therefor.

[5] First, we find that Judge Small correctly delineated the elements of arson in his charge to the jury, see *infra.* In fact, he repeated almost verbatim the patterned instructions for the offense. *See* N.C.P.I. — Crim. § 215.10 (1981). Nevertheless, defendant now maintains that the judge should have told the jury *sua sponte* that there must be a partial burning or slight charring of some portion of the building and that a mere scorching or discoloration thereof would not suffice as arson. *See* N.C.P.I., *supra,* at note 1. To the contrary, we believe that a trial court is not obligated *ex mero motu* to make this distinction for the jury where, as here, no serious question concerning the nature of the damage caused by the fire is ever raised during trial. *See id.* We must again emphasize that defendant relied on an alibi defense and did not challenge the State's evidence that an arson had been committed. More particularly, the testimony concerning smoke damage to the paint on various walls in the dwelling did *not,* as defendant seems to believe, negate the occurrence of at least some burning or charring of the building.[4] Such testimony cannot

---

4. The two Texas cases cited by defendant in his brief, *Woolsey v. State,* 30 Tex. Crim. 346, 17 S.W. 546 (1891) and *Van Morey v. State,* 112 Tex. Crim. 439, 17 S.W. 2d 50 (1929) are clearly inapposite upon this basis. In both *Woolsey* and *Van Morey,* there was *conflicting* testimony about whether the fire had merely scorched or smoked parts of the house, instead of burning its structure. The Texas Court of Criminal Appeals held in both instances that the trial court had committed prej-

be reasonably deemed as anything more than a description of *additional* damage caused by the fire since other independent and uncontroverted evidence showed that the house itself had been burned, including several patches on one wall and some wallpaper, to the extent that certain electrical wiring in the structure was loosened. There being no affirmative evidentiary conflict regarding the legal application of the term "burned" to the facts of this case, we hold that the judge did not have to explain its meaning absent a request, to the jury, as it is a plain, simple word commonly understood by people of average intelligence. *State v. Witham*, 281 S.W. 32, 34 (Mo. 1926).

[6]  Second, we find that Judge Small correctly characterized and stressed the type of property that had to be burned by the fire to constitute arson. In pertinent part, he charged the jury as follows:

> As to the case where the defendant is charged with the crime of arson, I instruct you that in order for you to find the defendant guilty, the State must prove three things beyond a reasonable doubt: First, that the defendant *burned a dwelling house;* Second, that the dwelling house at the time it was burned, was inhabited by Pyree Locklear; Third, that the defendant in burning the dwelling house acted maliciously. That is, he intentionally *burned the building* without lawful excuse or justification.
>
> . . . .
>
> So I instruct you as to the charge of arson, that if you should find from the evidence beyond a reasonable doubt, that on or about December nine, 1980, Ronnie Ray Oxendine, maliciously *burned the dwelling house* of Pyree Locklear, which was inhabited by Pyree Locklear by pouring kerosene on the house or around the window to the bedroom and igniting it with his cigarette lighter, or some other means, and thereby *burning the house*, it would be your duty to return a verdict of guilty of arson.

udicial error in failing to give the *specially requested* instructions regarding the necessity for an actual burning of the building to sustain a conviction of arson. [Defendant did not tender a similar request in the instant case.]

(Emphases added.) The judge did not once suggest to the jury that the burning of personal property inside the dwelling could suffice as arson. In fact, the only evidence in the entire record of fire damage to personal property within the dwelling was Officer Halstead's solitary statement that the curtains had been burned. In such circumstances, we fail to see how the jury could have been misled or confused. *But see State v. Schenk*, 100 N.J. Super. 122, 241 A. 2d 267 (1968). In any event, if defendant had been genuinely worried about this possibility at trial, he could have, and he should have, requested a specific instruction upon the matter.

[7]  Defendant finally contends that the trial court erred in allowing the admission of his custodial statement. That signed statement read, in part, as follows:

> Then about dark I went to my Aunt Pyree Locklear's home. I found some kerosene in a building behind her home. I took and poured some of it on a window in front of her house. I broke the window out with a oak stick. I then took my cigarette lighter and set the curtains on fire. I then went back to the building behind her house and poured the rest of the kerosene on it and set it on fire. I threw the can into the fire. I went back to check the fire I had started on the front of the house. It was not burning too good. I then took a stick and broke the windows out of the house. I then went into the house and turned over the couch, chairs and table. . . . I left and walked to Miss Blanton's. I got her to bring me to the bus station in Lumberton. . . . I have been having trouble with my Aunt for about two years. I believe that she had my home burned and stole my dog.

Prior to the introduction of the confession, defense counsel generally requested a *voir dire* hearing. He did not, however, specifically object to the statement's admission, and he did not state his reasons for requesting the *voir dire* hearing. Nevertheless, the trial court honored the obscure motion and conducted a prompt hearing upon the matter. All of the evidence adduced at the hearing was directed at determining whether defendant knowingly waived his constitutional rights and voluntarily made the subsequent statement. For instance, defendant testified that he had been drinking prior to the questioning, that he could not read, that he did not understand what he was signing when he

wrote his name on the statement, and that he did not, in fact, make the inculpatory remarks included therein.

At the conclusion of the *voir dire* hearing, the judge entered an order for admission of the confession.[5] In the order, the judge made findings of fact supporting the following conclusions of law:

> There was no offer of reward, hope of reward or other inducement made by any officer to persuade the defendant to make a statement against his will.

> There was no threat of violence, show of violence or suggestion of violence to coerce the defendant to make a statement against his will.

> The defendant fully understood his Constitutional rights to remain silent and his rights to an attorney, and all other rights explained to him by Officer Collins.

> The defendant perfectly, freely, voluntarily, knowingly and understandingly, waived each of these rights and thereupon made a statement to the Officers.

> The statement made by the defendant to Officer Raymond . . . Roland Collins, on December ninth, 1980, was made freely, voluntarily, knowingly, understandingly, and the same was admitted into evidence.

Defendant did not except to any of the findings of fact. Nonetheless, in our discretion, we have reviewed those findings. We hold that there was ample competent evidence in the record to support them; thus, they are binding in this appeal. *State v. Thompson,* 303 N.C. 169, 277 S.E. 2d 431 (1981); *State v. Gray,* 268 N.C. 69, 150 S.E. 2d 1 (1966), *cert. denied,* 386 U.S. 911, 87 S.Ct. 860, 17 L.Ed. 2d 784 (1967).

[8] Nevertheless, defendant *now* asserts as error *in this Court* the admission of the confession upon the ground that it was obtained by an exploitation of his illegal arrest and detention. The legality of defendant's seizure and detention was not, however, a subject of inquiry during the *voir dire* hearing or at any time during trial. We have this very day filed another decision involving

---

5. Defense counsel did not make a formal motion to suppress the confession either before or during trial.

virtually identical procedural facts. *State v. Hunter*, 305 N.C. 106, 286 S.E. 2d 535 (1982). The issue concerning the scope of appellate review in these circumstances has been fully and carefully addressed in the well reasoned opinion of Chief Justice Branch in *Hunter*. We shall not plow that same ground again here. It suffices to say that, *Hunter* being sound and binding authority, we shall not entertain in this appeal a theory of attack upon the admissibility of defendant's confession which is different from that specifically advanced by defense counsel at trial. The assignment of error is overruled.

In defendant's trial and convictions, we find no error.

No error.