STATE OF NORTH CAROLINA v. NATHAN NORWOOD NORRIS, JR.

No. COA04-574

(Filed 16 August 2005)

**1. Appeal and Error— preservation of issues—failure to argue**

Defendant's assignments of error that were not argued in his brief are deemed abandoned pursuant to N.C. R. App. P. 28(b)(6).

**2. Arson— first-degree—charring—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of first-degree arson, because: (1) the residence in the instant case was described as a double-wide mobile home with a vinyl exterior, and the melting of vinyl constitutes a change in the identity of the material beyond a mere scorching or discoloration by heat; (2) evidence tending to show that the vinyl on the exterior of a residence is melted substantiates the charring element of arson; and (3) the owner of the residence testified that she could see flames out her window and an investigator noted damage to the residence including smoke damage and charring.

**3. Arson— first-degree—instruction—attempted arson**

The trial court did not err in a first-degree arson case by denying defendant's request for a jury instruction on attempted arson, because: (1) there was sufficient evidence from which the jury could find that there was an actual burning of the residence; and (2) there was no evidence presented at trial from which the jury could find an attempt to burn the house which failed.

**4. Sentencing— presumptive range—failure to submit aggravating factor to jury—*Blakely* error**

The trial court erred in a first-degree arson case by failing to submit the aggravating factor to the jury that the offense created a great risk of death to more than one person even though it sentenced defendant in the presumptive range after balancing the aggravating and mitigating factors, and the case is remanded for resentencing, because: (1) the Court of Appeals is unable to speculate whether the jury would have found the aggravating factor found by the trial court; (2) assuming arguendo that the jury did not find the aggravating factor, the trial court would then be left to balance only the three mitigating factors it found; and (3) although the trial court would retain the discretion to sentence

defendant in the presumptive range despite the presence of the mitigating factors, there is the possibility that defendant might be sentenced in the mitigated range due to the absence of aggravating factors.

Judge STEELMAN concurring in part and dissenting in part.

Appeal by defendant from judgment entered 3 October 2003 by Judge Gary L. Locklear in Robeson County Superior Court. Heard in the Court of Appeals 12 January 2005.[1]

*Attorney General Roy Cooper, by Assistant Attorney General James C. Holloway, for the State.*

*Nora Henry Hargrove for defendant-appellant.*

TIMMONS-GOODSON, Judge.

Nathan Norwood Norris, Jr. ("defendant"), appeals his conviction for first-degree arson. For the reasons discussed herein, we hold that defendant received a trial free of prejudicial error, but we remand the case for resentencing.

The State's evidence presented at trial tends to show the following: On 29 January 2003, defendant's wife, Jessica Wood ("Jessica"), told defendant that she no longer loved him and that she wanted to separate and move in with her mother, Peggy Wood ("Peggy"). That evening, defendant drove Jessica to Peggy's residence. Defendant and Jessica argued during the drive. As Jessica was exiting defendant's automobile, defendant told her, "If I was you, I'd sleep light tonight."

At approximately 1:30 a.m. the next morning, Peggy awoke to the sound of an "explosion" outside her residence. Peggy observed flames through her bedroom window and evacuated all occupants from the residence. Robeson County Sheriff's Department Investigator Rory McKeithan ("Investigator McKeithan"), an arson investigator, responded to a call regarding a fire at Peggy's residence. Upon arriving at the scene, Investigator McKeithan parked his automobile approximately fifty yards from the residence. As he approached the residence, Investigator McKeithan smelled a "strong odor of what appeared to be gasoline." The odor intensified as Investigator McKeithan neared the residence.

---

1. By order of this Court, the filing of this opinion was delayed pending our Supreme Court's decision in *State v. Allen*, 359 N.C. 425, —— S.E.2d —— (Filed 1 July 2005) (No. 485PA04).

Investigator McKeithan interviewed Jessica and Peggy inside Peggy's residence. During the interview, Peggy's telephone rang. Peggy answered the telephone and told Investigator McKeithan that it was defendant calling. Investigator McKeithan spoke to defendant on the telephone and explained that he needed to interview defendant about the fire. Defendant told Investigator McKeithan that he could not have been at the residence that evening because he had been drinking all day, had passed out, and had awoken just before making the telephone call.

After Investigator McKeithan finished gathering evidence, he returned to the Robeson County Sheriff's Office. Defendant was brought in for questioning, and, after advising him of his rights, Investigator McKeithan interviewed defendant. Defendant's statement to Investigator McKeithan contains the following pertinent narration:

> On the way back to Lumberton, Jessica told me that she did not love me any more and that she did not want to be with me any more. I asked how she could want to end this marriage when we had been together for four years. Jessica looked as if she didn't care.
>
> . . . .
>
> I took Jessica back to her mother's house . . . . When we arrived at Peggy's house, I called Jessica a bitch. I also told Jessica on the way . . . that she better sleep light tonight. I then laughed and said that she was just not worth it.
>
> . . . .
>
> When I arrived in St. Pauls, I went to the Amoco Gas Station on Highway 20 and purchased four dollars worth of gas for my van. I had a plastic 20 ounce Coca-Cola bottle in my van. I filled the bottle half full of gasoline. I put the bottle in the van.
>
> I then drove to Peggy's house and parked the van on a dirt road beside her house. I got the bottle of gas from the van and walked to Peggy's house. I went to the side of Peggy's house and poured the gasoline on the side of her home. I then took a lighter and set the gas on fire. The fire flamed up and I got scared and ran.
>
> As I ran away, I looked back and saw flames. Then the flames looked as if they had died down. I was scared. I got back in my van and drove back to Lumberton.
>
> . . . .

I told the police officer that I did not know what was going on. I was trying to play stupid. I told the officer that I had been drinking all day and that I had passed out. Then the police returned and picked me up. ·

On 5 May 2003, defendant was indicted for the first-degree arson of Peggy's residence. Defendant's trial began the week of 30 September 2003. The State presented testimony from Jessica, Peggy, and Investigator McKeithan, who read defendant's statement into evidence. Defendant presented no evidence. On 3 October 2003, the jury found defendant guilty of first-degree arson. The trial court subsequently found as an aggravating factor that, during the commission of the offense, defendant knowingly created a great risk of death to more than one person by means of a weapon or device which would normally be hazardous to the lives of more than one person. As mitigating factors, the trial court found that defendant voluntarily acknowledged wrongdoing in connection with the offense to a law enforcement officer prior to arrest, that defendant had a support system in the community, and that defendant had a positive employment history or was gainfully employed. After concluding that the aggravating and mitigating factors balanced one another out, the trial court sentenced defendant to fifty-one to seventy-one months imprisonment, a term within the presumptive range. Defendant appeals.

[1] As an initial matter, we note that defendant's brief does not contain arguments supporting each of the original assignments of error on appeal. Pursuant to N.C.R. App. P. 28(b)(6) (2005), the omitted assignments of error are deemed abandoned. Therefore, we limit our present review to those assignments of error properly preserved by defendant for appeal.

The issues on appeal are whether the trial court erred: (I) by denying defendant's motion to dismiss; (II) by denying defendant's request for a jury instruction on attempted arson; and (III) in sentencing defendant.

[2] Defendant first argues that the trial court erred by denying his motion to dismiss the charge of first-degree arson. Defendant asserts that the State failed to produce sufficient evidence tending to show that the residence was burned. We disagree.

In ruling on a motion to dismiss, "the trial court must determine whether there is substantial evidence of each element of the offense charged . . . ." *State v. Bullard,* 312 N.C. 129, 160, 322 S.E.2d 370, 387

(1984). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). The trial court must consider the evidence in the light most favorable to the State, granting the State the benefit of every reasonable inference. *State v. Brown*, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984).

Arson is a common law crime, and has been defined as "the willful and malicious burning of the dwelling house of another person." *State v. Eubanks*, 83 N.C. App. 338, 339, 349 S.E.2d 884, 885 (1986). Where the building is occupied at the time of the burning, the offense is first-degree arson. N.C. Gen. Stat. § 14-58 (2003). Similarly, where the building is a "mobile home or manufactured-type house or recreational trailer home which is the dwelling house of another and which is occupied at the time of the burning, the same shall constitute the crime of arson in the first degree." N.C. Gen. Stat. § 14-58.2 (2003).

> [S]ome portion of the [building] itself, in contrast to its mere contents, must be burned to constitute arson; however, the least burning of any part of the building, no matter how small, is sufficient, and it is not necessary that the building be consumed or materially damaged by the fire.

*State v. Oxendine*, 305 N.C. 126, 129, 286 S.E.2d 546, 548 (1982). In order for a building to be "burned" within the definition of arson, the building must be " 'charred, that is, when the wood is reduced to coal and its identity changed, but not when merely scorched or discolored by heat.' " *Id.* (quoting *State v. Hall*, 93 N.C. 571, 573 (1885)).

In *Oxendine*, the defendant argued that the State produced insufficient evidence to show he burned the structure, rather than the interior, of a residence. On appeal, our Supreme Court noted that evidence was introduced at trial tending to show that the fire was accompanied by a large amount of smoke, was visible from the highway, and was responsible for the loosening of the building's electrical wiring. 305 N.C. at 130, 286 S.E.2d at 548. The Court concluded that from this evidence alone, "one could reasonably infer that the fire inside the house was substantial enough to cause *at least some charring* of the structure[.]" *Id.* (emphasis in original). The Court noted that the State's case was "further strengthened" by testimony that the curtains of the building were burned, that dark or burned patches appeared on the wall, that the wallpaper was burned, that there was a heavy odor of kerosene in the area, and that smoke was present throughout the building. *Id.* The Court concluded that

Surely, this evidence plainly showed that the dwelling itself, and not merely something in it (the curtains), had been burned. It is difficult to perceive how dark, *burned* patches could appear on a wall absent the prior incidence of at least minor charring of that wall's substantive material. Defendant's additional argument that the presence of burnt wallpaper in the dwelling had no rational tendency to indicate the charring of the building's structure simply defies good sense and logic. Wallpaper affixed to an interior wall is unquestionably a part of the dwelling's framework. If the wallpaper is burning, it would perforce suggest that the house is also burning. Hence, we hold that where, as here, the evidence discloses that the wallpaper in a dwelling has been *burned*, it competently substantiates the charring element of arson.

*Id.* at 130-31, 286 S.E.2d at 548-49 (footnotes omitted) (emphasis in original).

In the instant case, Peggy's residence was described at trial as a double-wide mobile home with a vinyl exterior. Peggy testified that a "poof, explosion" woke her up the morning of the incident, and that she could "see the flames" which "burnt" her residence. Investigator McKeithan testified to the presence of a strong odor of gasoline in the area of the residence, and he noted "damage to the left end" of Peggy's residence. Investigator McKeithan testified that "[f]ire and smoke damage had occurred" to Peggy's residence, as well as charring. The State presented photographs of the residence taken the day after the fire. During defense counsel's argument regarding the motion to dismiss, the trial court reviewed the photographs and noted the following:

I don't know if you can tell from those photographs that the wood was burned. . . . But unless my eyes are deceiving me, I guess you would say wood chars, vinyl melts away when it is heated under a flame or intense heat. And I think melting in this instance is the equivalent of charring.

In light of *Oxendine*, we conclude that, when viewed in the light most favorable to the State, the evidence in the instant case tends to show that Peggy's residence was burned within the common law meaning of arson. The melting of vinyl constitutes a change in the identity of the material beyond a mere scorching or discoloration by heat. Thus, evidence tending to show that the vinyl on the exterior of a residence is melted substantiates the charring element of arson. Furthermore, as detailed above, Peggy testified that

she could see flames out her window, and Investigator McKeithan noted damage to Peggy's residence, including smoke damage and charring. Therefore, in light of the foregoing, we conclude that the trial court did not err by denying defendant's motion to dismiss the charge of first-degree arson.

**[3]** Defendant next argues that the trial court erred by denying his request for a jury instruction on attempted arson. Defendant asserts that the evidence introduced at trial required that the trial court instruct the jury on the lesser-included offense. We disagree.

In *State v. Shaw*, 305 N.C. 327, 289 S.E.2d 325 (1982), the defendant was convicted for the first-degree arson of a residence occupied by his wife and three nieces. On appeal, the defendant sought a new trial because the trial court denied his request to instruct the jury on attempted arson. The Supreme Court noted that "[w]here there is evidence of defendant's guilt of a lesser degree of the crime set forth in the bill of indictment, the defendant is entitled to·have the question submitted to the jury . . . ." *Id.* at 338, 289 S.E.2d at 331 (citing *State v. Moore*, 300 N.C. 694, 268 S.E.2d 196 (1980)). However, with respect to arson, the Court concluded that

> If there [i]s sufficient evidence from which the jury could find that there was an actual "burning" of the [victim's] house, and if there is *no* credible evidence from which the jury could find an attempt to burn which failed, [the] defendant would not be entitled to an instruction on the lesser included offense of attempt to commit arson.

305 N.C. at 339, 289 S.E.2d at 332 (footnote omitted) (emphasis in original).

In the instant case, based on the evidence detailed above—including the melting of the vinyl siding discussed *supra*—there was sufficient evidence from which the jury could find that there was an actual burning of Peggy's residence. Furthermore, there was no evidence presented at trial from which the jury could find an attempt to burn the house which failed. As the Court noted in *Shaw*, " '[t]he trial court is not required to charge the jury upon the question of the defendant's guilt of lesser degrees of the crime charged in the indictment when there is no evidence to sustain a verdict of [the] defendant's guilt of such lesser degrees.' " *Id.* at 342, 289 S.E.2d at 333 (quoting 4 N.C. Index 3d, Criminal Law § 115 (1976)). Accordingly, in light of *Shaw* and the record in the instant case, we conclude that the

trial court did not err by refusing to instruct the jury on the lesser-included offense of attempted arson.

**[4]** In his brief as well as in a motion for appropriate relief filed with his appeal, defendant argues that the trial court erred in sentencing him. Defendant asserts that his sentence should be remanded due to the trial court's failure to submit the aggravating factor to the jury for proof beyond a reasonable doubt. We agree.

In *State v. Allen*, 359 N.C. 425, —— S.E.2d —— (2005), our Supreme Court recently examined the constitutionality of North Carolina's structured sentencing scheme in light of the United States Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435 (2000) and *Blakely v. Washington*, 542 U.S. 296, 159 L. Ed. 2d 403 (2004). After reviewing the applicable case law, the Court in *Allen* concluded that, when "[a]pplied to North Carolina's structured sentencing scheme, the rule of *Apprendi* and *Blakely* is: Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed presumptive range must be submitted to a jury and proved beyond a reasonable doubt." 359 N.C. at 437, —— S.E.2d at —— (citing *Blakely*, 542 U.S. at ——, 159 L. Ed. 2d at 413-14; *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455; N.C. Gen. Stat. §§ 15A-1340.13, 15A-1340.14, 15A-1340.16, 15A-1340.17). In the instant case, as detailed above, following defendant's conviction for first-degree arson, the trial court found as an aggravating factor that, during the commission of the offense, defendant knowingly created a great risk of death to more than one person by means of a weapon or device which would normally be hazardous to the lives of more than one person. As mitigating factors, the trial court found that defendant voluntarily acknowledged wrongdoing in connection with the offense to a law enforcement officer prior to arrest, that defendant had a support system in the community, and that defendant had a positive employment history or was gainfully employed. After balancing the aggravating and mitigating factors, the trial court concluded that "both aggravating and mitigating factors balance out one another," and it therefore sentenced defendant in the presumptive range. We conclude that the trial court erred.[2]

---

2. Defendant also asserts that the trial court erred by finding the aggravating factor because the State failed to allege it in defendant's indictment. However, our Supreme Court expressly rejected a similar assertion by the defendant in *Allen*. 359 N.C. at 438, —— S.E.2d at —— (overruling language in *State v. Lucas*, 353 N.C. 568, 548 S.E.2d 712 (2001), "requiring sentencing factors which might lead to a sentencing enhancement to be alleged in an indictment[,]" finding no error in the State's failure to include aggravating factors in the defendant's indictment, and noting that in *State v.*

**STATE v. NORRIS**

[172 N.C. App. 722 (2005)]

We note that in *Allen*, the Court provided the following pertinent limitation to its holding:

> We emphasize that *Blakely*, which is grounded in the Sixth Amendment right to jury trial, affects only those portions of the Structured Sentencing Act which require the sentencing judge to consider the existence of aggravating factors not admitted to by a defendant or found by a jury and which permit the judge to impose an aggravated sentence after finding such aggravating factors by a preponderance of the evidence. *Those portions of N.C.G.S. § 15A-1340.16 which govern a sentencing judge's finding of mitigating factors and which permit the judge to balance aggravating and mitigating factors otherwise found to exist are not implicated by Blakely and remain unaffected by our decision in this case.*

359 N.C. at 439, —— S.E.2d at —— (emphasis added). However, we are not convinced that the circumstances of the instant case are implicated by the above-quoted limiting language. Defendant's appeal asks us to decide whether a defendant sentenced in the presumptive range after a balancing of aggravating and mitigating factors is nevertheless prejudiced by the trial court's failure to submit the aggravating factor or factors to the jury for proof beyond a reasonable doubt. The issue does not involve the general ability of the trial court to balance properly found aggravating and mitigating factors, which we recognize remains a discretionary decision. *Id.* at 439, —— S.E.2d at ——. Instead, the issue involves a "structural error" by the trial court, whereby the "safeguards [for] participation of jurors in sentencing" are affected. *Id.* at 440, —— S.E.2d at ——.

In the instant case, the trial court found that defendant knowingly created a great risk of death to more than one person by means of a hazardous weapon or device. This determination was made unilaterally, without first submitting the issue to the jury for proof beyond a reasonable doubt. The State emphasizes that defendant was nevertheless sentenced in the presumptive range, and that therefore the trial court's failure to submit the aggravating factor to the jury was effectively cured by defendant's sentence in the presumptive—and admittedly constitutionally-approved—range. However, we are not

---

*Hunt*, "[T]his Court concluded that 'the Fifth Amendment would not require aggravators, even if they were fundamental equivalents of elements of an offense, to be pled in a state-court indictment.' " (quoting *State v. Hunt*, 357 N.C. 257, 272, 582 S.E.2d 593, 603, *cert. denied*, 539 U.S. 985, 156 L. Ed. 2d 702 (2003)). Accordingly, defendant's assertion in the instant case is overruled as well.

convinced that the ultimate disposition of the case cured the underlying Sixth Amendment error. Instead, we note the similarities of the State's argument and the "harmless error" argument our Supreme Court refused to apply to sentencing errors in *Allen*. Recognizing that " '[s]peculation on what juries would have done if they had been asked to find different facts' is impermissible," the Court held that " '[h]armless error analysis cannot be conducted on *Blakely* Sixth Amendment violations.' " 359 N.C. at 448, —— S.E.2d at —— (quoting *State v. Hughes*, 154 Wash. 2d 118, 148, 110 P.3d 192, 208 (2005)) (alterations in original).

We conclude that the same reasoning applies to the instant case. Just as the Court in *Allen* was unable to speculate as to whether the jury would have found the aggravating factor at issue, this Court is unable to speculate whether the jury would have found the aggravating factor found by the trial court in the instant case. Assuming *arguendo* that the jury did not find the aggravating factor, the trial court would then be left to "balance" only the three mitigating factors it found. Although the trial court would retain the discretion to sentence defendant in the presumptive range despite the presence of the mitigating factors, we are nevertheless persuaded by the possibility that defendant might be sentenced in the mitigated range due to the absence of aggravating factors.

Defendant's sentence in the presumptive range for first-degree arson—based in part upon a unilateral finding that the offense created a great risk of death to more than one person—contains the same defect as a sentence in the aggravated range based upon a unilaterally found aggravating factor. In both situations, the trial court violated a defendant's Sixth Amendment right by failing to submit for jury determination a factor which permitted the trial court to impose a longer sentence than that set forth in the provisions defining the underlying offense. Thus, after reviewing the record and circumstances of the instant case, we conclude that defendant is entitled to a new sentencing hearing, notwithstanding the trial court's decision to sentence him the presumptive range. On remand, the trial court is instructed to submit any factor in aggravation to the jury for proof beyond a reasonable doubt. Following the jury's determination, the trial court may then balance the properly found aggravating and mitigating factors in accordance with the discretion granted it by N.C. Gen. Stat. § 15A-1340.16.

In light of the foregoing conclusions, we hold that defendant received a trial free of prejudicial error, but we remand the case for resentencing.

No error at trial; remanded for resentencing.

Judge HUDSON concurs.

Judge STEELMAN concurs in part and dissents in part.

STEELMAN, Judge concurring in part and dissenting in part.

I fully concur with the majority opinion as to the first two issues discussed. However, I must respectfully dissent as to the third issue.

### I.  Question Presented

Whether the holdings in *Blakely v. Washington*, 542 U.S. 296, 159 L. Ed. 2d 403 (2004) and *State v. Allen*, 359 N.C. 425, —— S.E.2d —— (2005) apply when the trial judge imposes a sentence from the presumptive range under North Carolina's Structured Sentencing Act (Article 81B of Chapter 15A).

### II.  Decision in *Blakely v. Washington*

In *Blakely*, the United States Supreme Court held it was a violation of the Sixth Amendment to the United States Constitution for a judge to impose a sentence in excess of the "statutory maximum" sentence based on facts which were neither admitted by the defendant nor found by a jury. 542 U.S. at ——, 159 L. Ed. 2d at 413-15. Writing for the Court, Justice Scalia stated: "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." 542 U.S. at ——, 159 L. Ed. 2d at 413.

In *Allen*, our Supreme Court stated:

"We should be clear that nothing in this history suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment within the range prescribed by statute. We have often noted that judges in this country have long exercised discretion of this nature in imposing sentence[s] within statutory limits in the individual case."

*Allen,* 359 N.C. at 435, —— S.E.2d at —— (quoting *Apprendi v. New Jersey,* 530 U.S. 466, 481, 147 L. Ed. 2d 435, 449 (2000)).

I would hold that neither *Blakely* nor *Allen* are implicated unless the trial judge imposes a sentence in excess of the statutory maximum based upon facts which were neither admitted by defendant nor found by a jury. Since the trial court in this case sentenced defendant from the presumptive range, neither *Blakely* nor *Allen* should be applied to require a new sentencing hearing.

III. North Carolina's Structured Sentencing Scheme

N.C. Gen. Stat. § 15A-1340.16(c) (2005) provides: "The court shall make findings of the aggravating and mitigating factors present in the offense only if, in its discretion, it departs from the presumptive range ·of sentences specified in G.S. 15A-1340.17(c)(2)." Our courts have consistently held that our General Assembly intended for the trial court to take into account factors in aggravation or mitigation *only* when a presumptive range sentence is not imposed. *State v. Campbell,* 133 N.C. App. 531, 542, 515 S.E.2d 732, 739 (1999) (citing *State v. Caldwell,* 125 N.C. App. 161, 162, 479 S.E.2d 282, 283 (1997)). The trial judge has the discretion to impose a presumptive range sentence in any case regardless of the number or quality of aggravating or mitigating factors presented. Our appellate courts have consistently refused to review aggravating or mitigating factors when the trial court imposed a presumptive range sentence. *See e.g. Campbell,* 133 N.C. App. at 542, 515 S.E.2d at 739; *State v. Taylor,* 155 N.C. App. 251, 267, 574 S.E.2d 58, 69 (2002). In *State v. Streeter,* this Court specifically rejected the defendant's argument that the imposition of a presumptive range sentence violated his due process and equal protection rights where there were uncontroverted statutory mitigating factors present. 146 N.C. App. 594, 599, 553 S.E.2d 240, 243 (2001).

In this case, after considering all the evidence presented at the sentencing hearing, the trial judge imposed a sentence from the presumptive range. The majority opinion reasons that a jury might not have found an aggravating factor and therefore, there was a "possibility that defendant might be sentenced in the mitigating range due to the absence of aggravating factors." I submit that not only is this mere speculation, but is also irrelevant. The trial judge had discretion to sentence defendant from the presumptive range regardless of whether he found any aggravating factors present. This would be true no matter whether the aggravating factor was presented to

the judge alone or to the jury under the provisions of N.C. Gen. Stat. § 15A-1340.16.[3] In amending this statute to comply with *Blakely*, the General Assembly preserved the trial court's discretion to sentence defendant from the presumptive range. The only changes provided for were a different burden of proof and a different fact finder for aggravating factors. It is solely in the trial court's discretion to depart from the presumptive range.

The majority opinion starts the appellate courts down a slippery slope, which will require appellate review of each aggravating and mitigating factor and their balancing by the trial judge, even in cases where a presumptive sentence is imposed. Such an approach is contrary to the legislative intent of Structured Sentencing and binding case precedent of this state.

I would find no error in both the trial and sentencing of defendant in this matter.

―――――――――

3. The General Assembly amended the previous version of the Structured Sentencing Act in order that it conform to the United States Supreme Court's decision in *Blakely v. Washington*. 2005 N.C. Sess. Laws 145.