STATE OF NORTH CAROLINA v. DWAYNE TYRONE HUNTER

No. 73

(Filed 27 January 1982)

**1. Criminal Law § 75— confession—voluntariness**

In a prosecution for first degree murder, there was ample competent evidence to support the trial judge's findings of fact and the findings of fact in turn supported his conclusion that defendant's statement to police was freely, understandingly and voluntarily made.

**2. Criminal Law § 76.10— attack on confession—theory not used at trial**

When there is an objection to the admission of a confession or a motion to suppress a confession, counsel must specifically state to the court before voir dire evidence is received the basis for his motion to suppress or for his objection to the admission of the evidence. Therefore, where the record disclosed that, at the trial level, defendant did not attack the admission of his confession into evidence on the ground that he was illegally arrested, but rather attacked the voluntariness of his confession on grounds it had been coerced, he could not attack his confession on the illegal arrest theory on appeal.

**3. Criminal Law § 75.1— delay in taking defendant before judicial officer—no relationship to confession**

As there was no causal relationship between delay in taking defendant before a judicial officer and defendant's confession demonstrated, the delay did not render the confession inadmissible into evidence. G.S. 15A-974(2).

**4. Assault and Battery § 8— right to defend from forcible sexual assault—Pattern Jury Instructions—right of male to use**

The model jury instruction as worded, N.C.P.I. Crim. 308.70, entitling those of the feminine gender to an instruction to the jury on self-defense from sexual assault should be modified wherever necessary to allow a male defendant to present such a defense to the jury.

**5. Assault and Battery §§ 8, 15.1— sexual assault—not substantial feature where assault with deadly weapon**

Where, in a homicide case, an attempted sexual assault was not a separate substantial feature of a case, but was merely one aspect of an assault with a deadly weapon, the judge was not required to instruct the jury on it. When the deadly weapon was introduced, the fear of death or great bodily harm from the deadly weapon became the real and apparent danger from which defendant sought to protect himself.

APPEAL by defendant pursuant to G.S. 7A-27(a) from *Brewer, J.,* at the 2 February 1981 Session of ROBESON County Superior Court.

Defendant was charged in a bill of indictment with the first-degree murder of Theodore Roosevelt Mosby. He entered a plea of not guilty.

The State offered evidence tending to show that on 8 September 1980 neighbors discovered Mosby's body in his house trailer. He was nude and the body was in an upright position in a chair and a white cloth was grasped in his hand. When officers were summoned, they found the front door open. They entered by unlatching the screen door through a cut place in the screen. A window in the rear of the trailer was broken and pieces of glass were discovered the next day in a nearby field which "could have been" from the broken window. The officers took a window from the rear of Mosby's trailer and transported it to the S.B.I. office in Raleigh for fingerprint identification. At trial Special Agent Duncan of the S.B.I. testified that one of the fingerprints lifted from the window matched a fingerprint of defendant.

Deputy Sheriff Collins stated that he received an S.B.I. report on 19 September 1980. On the same day, Officer Mitchell "picked Mr. Hunter up." Defendant was carried to the Sheriff's office in Lumberton, where he was advised of his constitutional rights and placed under arrest. Defendant signed a waiver of his constitutional rights including right to have counsel present, and after about three hours of questioning signed the following inculpatory statement:

> On Saturday, 9-6-80, I went to the Mosby trailer. I went in and sat down. This must have been about 10:30 at night. When I got there, he was sitting there naked, so I asked him could I use the bathroom. So I went to the bathroom. So I cut on the light switch. They wouldn't come on. So he told me how to cut them on from the switch box in the room. So after I finished, I cut them out. Before I cut the lights out, I tried to close the window. It wouldn't completely close. So, after I left out of there, I went back in there and sat down. He started talking to me, asking me did I like men, and stuff like that, and so he asked me if I ever sucked anybody off, or had anybody ever sucked me off,- so he started trying to feel of me, so I started pushing him away. So he went to the kitchen and when he came back, he was laughing and had a knife, so he grabbed me and was trying to make me mess with him. So

he stuck me with the knife. I grabbed his hand and took the knife. So I was scared. I started stabbing him with it. So after I struck him, he was standing up and he slapped me in the face. When I struck him that's when the knife broke. That was before he slapped me. So after he slapped me, I ran out of the trailer, and that was it. I went down to Sarah Lee McCallum's house and I stayed there awhile and after I left, I went home.

After making the statement, defendant led the officers to the place where he had disposed of the knife. He was carried before a magistrate after the knife was recovered.

At defendant's request prior to the introduction of the confession, Judge Brewer conducted a voir dire hearing at which the State and defendant offered evidence as to the voluntariness of defendant's confession. At the conclusion of this hearing, Judge Brewer after finding facts and entering conclusions of law ruled that the confession be admitted, if otherwise competent. The evidence of defendant's confession was admitted over his objection.

Defendant testified in his own behalf and denied that he stabbed the victim, Mosby, and gave testimony which tended to incriminate John Manning as the killer. Defendant admitted making a statement that he stabbed Mosby but testified that it resulted from the officers' threats and coercion.

The jury returned a verdict of guilty of second-degree murder, and the trial judge imposed a sentence of life imprisonment.

*Rufus L. Edmisten, Attorney General, by David Roy Blackwell, Assistant Attorney General, for the State.*

*Malcolm R. Hunter, Jr., Assistant Appellate Defender, for defendant-appellant.*

BRANCH, Chief Justice.

Defendant assigns as error the trial judge's ruling admitting into evidence the incriminating statement made by him to police officers.

[1]  In support of this assignment of error, defendant first argues that his confession and the seizure of the knife were inadmissible into evidence because they were tainted by a warrantless and illegal arrest.

When defense counsel requested a voir dire hearing, the trial judge properly excused the jury and heard evidence from the State and defendant concerning the voluntariness of defendant's confession. At the conclusion of the hearing, the court, *inter alia*, found and concluded:

> 3. Prior to the defendant being asked any questions by law enforcement officers, he was read the applicable Constitutional Rights relating to right to counsel and right against self-incrimination.

Let's see. Did you introduce into evidence the signed waiver?

MR. WEBSTER: Your Honor, we simply read the waiver into evidence. We did not introduce the signed waiver.

COURT: Did you wish to introduce it into evidence?

MR. WEBSTER: Yes, Your Honor, I would move to introduce the signed waiver.

COURT: All right. Have the waiver marked for identification as State's Exhibit Number 1. State's Voir Dire Exhibit Number 1 will be received into evidence.

MR. CHAVIS: OJECTION.

COURT: OVERRULED.

— as are fully set out in State's Voir Dire Exhibit 1, which is hereby incorporated by reference.

> 4. After these rights were read to the defendant, he was asked if he understood these rights and affirmatively stated that he did understand these rights. The defendant was further asked if he desired an attorney and specifically stated that he did not desire an attorney. The defendant was then asked if he would then answer the questions of law enforcement officers. The defendant answered that he would answer the questions of law enforcement officers.

\*    \*    \*

6. The defendant thereafter was orally read the waiver portion of State's Voir Dire Exhibit 1, as fully set out in State's Voir Dire Exhibit 1, and, specifically asked if he understood the waiver portion, and the defendant indicated that he understood the waiver portion of State's Voir Dire Exhibit 1. The defendant further indicated his desire to waive his rights as set out in State's Voir Dire Exhibit 1, and talk to law enforcement officers. The defendant signed the waiver portion of State's Voir Dire Exhibit 1.

7. At all times during the interview process the defendant was rational, his responses to questions appropriate. The defendant did not exhibit the odor of alcohol or physical manifestations of intoxication.

8. At no time during the interview process was the defendant subjected to any promises—any threats, physical or mental, by law enforcement officers or other individuals. At no time during the interview process was the defendant made any promises, express or explicit, to induce the defendant to make a statement.

\*    \*    \*

Conclusions of Law: The defendant's statement was freely, understandingly and voluntarily made after the defendant was fully informed of all applicable constitutional and statutory rights relating to self incrimination and right to counsel, and after knowing, voluntary and intelligent waiver of those rights.

The trial court then, treating defendant's motion for a voir dire as a motion to suppress, overruled the motion.

It is well established that when a trial court's findings of fact are supported by competent evidence, even though conflicting, such findings are conclusive and will not be disturbed on appeal. 4 Strong's, North Carolina Index 3d, Criminal Law § 76.10 (1976), and cases there cited.

There was ample competent evidence to support the trial judge's findings of fact and the findings of fact in turn support his conclusion of law and ruling as to the voluntariness of defendant's

confession. Being satisfied of the threshold requirement of voluntariness of defendant's confession, we turn to his argument that an illegal arrest so tainted the confession and seizure of the knife as to make this evidence inadmissible.

[2]   This record discloses that defense counsel did not specifically question or object to the legality of the "pickup" or the arrest so as to place this contention at issue or before the trial judge at the voir dire hearing. Defendant did not object to testimony regarding the reason for the pickup and arrest offered prior to the voir dire. Neither did he object to the testimony concerning the discovery of the knife following the voir dire although he did object to its introduction as an exhibit. There is no indication in the record that a pretrial motion was made challenging the legality of the arrest as provided in G.S. 15A-975. Defendant did not raise a fourth amendment challenge to the arrest during the voir dire but rather generally attacked the voluntariness of his confession.

The only reference to his arrest or "pickup" is contained in the following quotes.

Defendant testified on voir dire:

He [Officer Mitchell] did not, at that time [when defendant was picked up], tell me I was under arrest. . . . When he got me down there in that room he did not tell me that I was under arrest. . . . I was first told that I was under arrest after—I think after he fingerprinted me.

After the voir dire was concluded, defense counsel in his argument stated:

[I]t's our contention that whenever the defendant was brought down that day he wasn't told whenever he was picked up he was under arrest. He wasn't told until sometime later. That whenever he got to the Courthouse down there in the room while interrogating him that no one told him that he was under arrest.

These statements do not point to probable cause for arrest or the legality of the arrest and the "pickup" but relate to the time when defendant was in custody or under such restraint as to make his inculpatory statements custodial in nature. Such evidence relates to the voluntariness of his statements.

The theory upon which a case is tried in the lower court must control in construing the record and determining the validity of the exceptions. Further, a constitutional question which is not raised and passed upon in the trial court will not ordinarily be considered on appeal. *State v. Dorsett,* 272 N.C. 227, 158 S.E. 2d 15 (1967); *State v. Grundler,* 251 N.C. 177, 111 S.E. 2d 1 (1959), *cert. denied,* 362 U.S. 917, 4 L.Ed. 2d 738, 80 S.Ct. 670 (1960).

Our examination of this record discloses that defendant did not attack the admission of his confession into evidence on the ground that he was illegally arrested or "picked up." The gravamen of his motion was the voluntariness of the confession and his challenge was based upon coercion. The evidence, the findings of the court, and the ruling of the court were obviously based on this theory.

A defendant, represented by counsel, cannot sit silently by at trial and object to the admission of evidence for the first time on appeal. *See State v. Richardson,* 295 N.C. 309, 326-27, 245 S.E. 2d 754, 765 (1978).

We held in *State v. Vickers,* 274 N.C. 311, 163 S.E. 2d 481 (1968), that a timely general objection was sufficient to challenge the *voluntariness* of a confession and require a voir dire hearing when the objection clearly called the matter to the trial judge's attention. *See also State v. Edwards,* 274 N.C. 431, 163 S.E. 2d 767 (1968). However, when a confession is challenged on other grounds which are not clearly brought to the attention of the trial judge, a specific objection or explanation pointing out the reason for the objection or motion to suppress is necessary. *State v. Richardson, supra.* In order to clarify any misunderstanding about the duty of counsel in these matters, we specifically hold that when there is an objection to the admission of a confession or a motion to suppress a confession, counsel must specifically state to the court before voir dire evidence is received the basis for his motion to suppress or for his objection to the admission of the evidence.

We are aware of defendant's reliance upon *Dunaway v. New York,* 442 U.S. 200, 60 L.Ed. 2d 824, 99 S.Ct. 2248 (1979); *Brown v. Illinois,* 422 U.S. 590, 45 L.Ed. 2d 416, 95 S.Ct. 2254 (1975); and *Wong Sun v. United States,* 371 U.S. 471, 9 L.Ed. 2d 441, 83 S.Ct.

407 (1963). Defendant's reliance on these cases is misplaced since the issue of an illegal arrest was not timely raised in this case.

[3] By this assignment of error, defendant also contends that his confession should have been suppressed because the officers acted in violation of G.S. 15A-501(2) by failing to take defendant before a judicial officer without unnecessary delay.

In *State v. Richardson, supra,* we considered the question here raised. There we noted that G.S. 15A-974(2) provides that evidence "obtained as a result" of a substantial violation of the provisions of Chapter 15A must be suppressed upon timely motion, and that the use of the term "result" in the statute indicated that a causal relationship between a violation of the statute and the acquisition of the evidence sought to be suppressed must exist. We reasoned that evidence will not be suppressed unless it has been obtained *as a consequence* of the violation. The evidence must be such that it would not have been obtained *but for* the unlawful conduct of the investigating officer. G.S. 15A-974(2) requires, at a minimum, this sort of causal connection between violations of Chapter 15A and the evidence objected to if such evidence is to be suppressed.

In the case before us, we find no such causal relationship between delay in taking defendant before a judicial officer and defendant's confession. Had he been taken before a judicial officer he would have been (1) advised of the charges against him, (2) his right to communicate with counsel and friends, and (3) the conditions upon which he could obtain pretrial release. This record discloses that (1) defendant was advised of his right to counsel before answering questions, (2) he was advised of the charges against him, and (3) he was advised that he would be furnished counsel if he were unable to employ one. Defendant does not take the position that this delay in furnishing him information as to his pretrial release or in failing to advise him that he might communicate with friends caused him to confess. We are of the opinion that the confession did not result from this delay. We therefore hold that defendant's confession did not result from a substantial violation of Chapter 15A so as to render it inadmissible into evidence.

[4, 5] Defendant next assigns as error the trial court's failure to instruct the jury concerning his right to defend himself from sexual assault.

*State v. Hunter*

The right to defend oneself from a forcible sexual assault, such as rape or sodomy, is recognized in other jurisdictions. *See* 40 Am. Jur. 2d *Homicide* § 166, p. 453 (1968); 40 C.J.S. *Homicide* § 101, p. 961 (1944). This Court has previously said in dictum that a female may use deadly force to protect herself from rape, *State v. Neville*, 51 N.C. 423, 433 (1859), and the Court of Appeals has recently held that for purpose of a claim of self-defense a male who is put in fear of homosexual assault is put in fear of great bodily harm. *State v. Molko*, 50 N.C. App. 551, 274 S.E. 2d 271 (1981). We agree with these holdings.

We note that the North Carolina Pattern Jury Instructions contain separate instructions for ordinary self-defense (N.C.P.I. Crim. 308.45) and defense from sexual assault (N.C.P.I. Crim. 308.70).* The instruction on defense from sexual assault is worded

---

* N.C.P.I. Crim. 308.70

SELF-DEFENSE TO SEXUAL ASSAULT—HOMICIDE.[1]

The defendant contends that there is evidence in this case that she acted in self-defense, defending herself from a sexual assault. The burden is on the State to prove beyond a reasonable doubt that the defendant did not act in self-defense. A killing would be entirely excused on the grounds of self-defense, if:

*First*, it appeared to the defendant and she believed it to be necessary to kill *(name victim)* in order to save herself from death, great bodily harm or sexual assault, and

*Second*, the circumstances as they appeared to the defendant at the time were sufficient to create such a belief in the mind of a person or [sic] ordinary firmness. It is for you the jury to determine the reasonableness of the defendant's belief from the circumstances as they appeared to her at the time. In making this determination, you should consider the circumstances as you find them to have existed from the evidence (including the size, age and strength of the defendant *as compared with that of (name victim)* (the fierceness of the assault upon the defendant, if any) (whether or not *(name victim)* had a weapon in his possession) (and) (the reputation, if any, of *(name victim)* for danger, violence and/or sexual attacks (upon females) ), and

*Third*, the defendant was not the aggressor. (If the defendant voluntarily and without provocation entered the [fight] [encounter], she was the aggressor unless she thereafter attempted to abandon the [fight] [encounter] and gave notice to *(name victim)* that she was doing so),

*And fourth*, the defendant did not use excessive force, that is, more force than reasonably appeared to be necessary to the defendant at the time. Again, it is for you, the jury, to determine the reasonableness of the force used by the defendant under all of the circumstances as they appeared to her at the time.

---

1. Sexual assault would include rape, attempted rape, any forcible crime against nature or attempted forcible crime against nature.

from the perspective of a female defendant. We see no reason why such an instruction should not be modified to allow a male defendant to make use of such an instruction where the circumstances justify its submission to the jury. Neither sex is free from the threat of forcible sexual assault and therefore both males and females are entitled to forcibly repel sexual assault where the circumstances warrant it. The model jury instruction as worded entitling those of the feminine gender to instruct the jury on self-defense from sexual assault should be modified wherever necessary to allow a male defendant to present such a defense to the jury.

A defendant is entitled to a charge on every substantial feature of the case. *State v. Jones*, 300 N.C. 363, 266 S.E. 2d 586 (1980); *State v. Watson*, 294 N.C. 159, 240 S.E. 2d 440 (1978); *State v. Everette*, 284 N.C. 81, 199 S.E. 2d 462 (1973).

In our opinion the substantial feature of this case was the assault with a deadly weapon which overrode and subordinated the attempted sexual assault. The attempted sexual assault was not a separate substantial feature of the case, rather it was merely one aspect of the assault with a deadly weapon and the judge was not required to instruct the jury on it. *State v. Ward*, 300 N.C. 150, 266 S.E. 2d 581 (1980). Had no deadly weapon been involved defendant would have been entitled to use reasonable force to protect himself from the possibility of death, great bodily harm, or sexual assault and would have been entitled to such a charge. *State v. Molko, supra*. However, according to defendant's confession, his claim of self-defense arose when Mosby introduced a knife and attacked defendant with it. At that point, defendant was put in fear of death or great bodily harm from the paramount threat posed by the knife and not from an attempted sexual assault. When the deadly weapon was introduced, the fear of death or great bodily harm from the deadly weapon became the real and apparent danger from which defendant sought to protect himself. Thus, under the facts and circumstances of this case, we find no prejudicial error in the judge's charge.

No error.