STATE OF NORTH CAROLINA v. RONNIE RICKS

No. 556A82

(Filed 31 May 1983)

1. **Criminal Law §§ 66.9, 66.16— photographic identification not suggestive—independent origin of in-court identification**

   A pretrial procedure at which photographs of seven black males, many of them wearing black caps or toboggans, were displayed to a rape victim was not impermissibly suggestive or conducive to irreparable mistaken identification because the victim's assailant had been described as wearing a dark colored coat and toboggan and defendant was the only person in the photographs wearing a dark coat; moreover, the fact that the victim was unable to make a positive identification of defendant from the photographs belies defendant's assertion that the procedure was impermissibly suggestive. Even if the photographic procedure was impermissibly suggestive, the trial court's determination that the victim's in-court identification of defendant was of independent origin was supported by evidence that the victim observed defendant for a period of at least three to four minutes while he stood on her lighted front porch; although defendant's face was partially covered by a toboggan, the victim was able to see his face, eyes and mouth; and the victim gave a description of her assailant to an officer when he interviewed her in the hospital some six days after the crime occurred.

2. **Criminal Law § 66.1— identification testimony—opportunity for observation**

   A rape victim's identification of defendant as her assailant was not inherently incredible and unworthy of belief where the victim was afforded a sufficient opportunity to observe her assailant so as to be able to make an accurate identification of him in that the victim observed defendant for a period of at least three to four minutes while he stood on her lighted front porch, and although defendant's face was partially covered by a toboggan, the victim was able to see his face, eyes and mouth.

3. **Criminal Law §§ 76.10, 146.1— attack on confession—theory not used at trial**

   Defendant cannot attack the admissibility of his confession in the appellate division upon a theory entirely different from that relied upon at trial.

ON appeal by defendant from *Allsbrook, Judge,* at the 29 March 1982 Session of NASH County Superior Court.

Defendant was tried upon separate bills of indictment charging him with first-degree rape and first-degree burglary. Defendant entered pleas of not guilty to each of the offenses charged.

The State offered evidence tending to show that on the evening of 24 November 1981, a young black male, later identified as defendant, came to the home of Ms. Lula Rogers in Sharpsburg,

North Carolina. Ms. Rogers testified that she talked to defendant through a partially opened door for about three or four minutes. Although it was dark outside, she could see defendant clearly because the porch was illuminated by an overhead light.

After this short conversation, defendant forced his way into the house and turned off all the inside lights. Defendant Ricks forced Ms. Rogers to have sexual intercourse with him and remained in the house for 30 to 45 minutes thereafter.

Ms. Rogers was hospitalized that evening as a result of the rape. On 30 November 1981, Officer Terry Newell, a special agent with the State Bureau of Investigation, came to the hospital to question Ms. Rogers about the evening of 24 November. At the time she first saw Newell, Ms. Rogers was taking medication for pain.

During this first visit, Ms. Rogers gave Officer Newell a description of her assailant. She described him as being 18 to 20 years old, approximately five feet, four and one-half inches tall, and wearing a dark colored coat and toboggan which covered most of his face. She said that despite the toboggan she could see his eyes, nose and mouth, but she was unable to tell whether he had sideburns.

Officer Newell returned to the hospital on 1 December 1981 to confer further with Ms. Rogers. At this time, he exhibited seven photographs to her, one of which was of defendant. Three of the men were wearing dark toboggans but only defendant wore both a toboggan and a coat. Ms. Rogers testified that she identified defendant from this array but her testimony was contradicted by Officer Newell. He stated that Ms. Rogers eliminated five of the pictures but that she was unable to positively identify either of the men in the remaining photographs as her assailant.

After extensive *voir dire* testimony, the trial court allowed the victim to make an in-court identification of defendant. Judge Allsbrook specifically found that Ms. Rogers' identification was based solely upon her observation of defendant on the night of 24 November, and that the in-court identification was in no way influenced by the photographic identification procedure conducted by Officer Newell at Nash General Hospital on 1 December. On cross-examination of Ms. Rogers before the jury, defense counsel

elicited details of the photographic identification made in the hospital.

The State offered further testimony of Officer Newell. He stated that he interviewed defendant on two separate occasions regarding the 24 November incident. Ricks did not make a statement during the first interview. However, during their second meeting at the Greenville S.B.I. office on 2 December 1981, defendant confessed to the rape of Ms. Rogers.

On *voir dire*, Officer Newell testified that defendant voluntarily came to the Greenville S.B.I. office on 2 December 1981 for the purpose of taking a polygraph test. After the examination, Newell advised defendant of his *Miranda* rights. When asked if he understood the warnings, defendant replied that he did. Defendant then made an oral statement while Officer Newell took notes. Newell then wrote a statement reflecting the substance of what Ricks had told him, read it to defendant and afforded him an opportunity to make corrections. Defendant made one change and then initialed each page and placed his signature at the end.

Officer William Robert Pernell of the Sharpsburg Police Department was also present when defendant offered this statement. His testimony corroborated that of Officer Newell with respect to the circumstances surrounding defendant's confession.

Defendant denied making any statement to the police on 2 December 1981. He testified that he merely wrote his name on a blank sheet of paper and then asked the police to take him back to work.

Following the *voir dire* hearing, Judge Allsbrook found facts and entered conclusions of law, including a conclusion that defendant voluntarily made the confession and "freely, knowingly, intelligently and voluntarily waived" his constitutional rights to remain silent and to have counsel present during interrogation. He then ruled that defendant's confession was admissible.

Other witnesses testifying for the State included Donna Marie Purnell, a cashier at L & L Food Store in Sharpsburg. She stated that on 24 November 1981, between 7:00 and 8:00 p.m., defendant came into the store wearing a toboggan and a dark jacket.

Dr. Hal Stephen Hemme testified that he treated Ms. Rogers at Nash General Hospital on the night of 24 November. He found sperm in the vaginal pool and a bruised vaginal wall.

Dr. Leon Robertson attended the victim on the following day. Ms. Rogers informed him that she had received the injuries as a result of being raped and beaten at her home.

Finally, a neighbor of the victim, James Melvin Joyner, stated that Ms. Rogers called him at about 10:00 p.m. on 24 November and asked him to come to her house. When he arrived, Ms. Rogers was extremely upset and told Joyner that she had been raped.

Defendant presented evidence in the nature of an alibi. Ricks took the stand on his own behalf and testified that he remained at home with his family throughout the evening of 24 November. He stated that he fell asleep at 8:00 p.m. and did not waken until 7:30 the next morning.

Lonnie Dortch, defendant's brother, testified that he was at home with defendant on the evening of 24 November. He stated that he knew defendant remained in bed from at least 9:00 until 11:00 p.m., at which time Dortch fell asleep.

The jury returned verdicts of guilty on each charge. The trial judge imposed a sentence of life imprisonment on the first-degree rape charge and a consecutive sentence of 20 years on the first-degree burglary charge. Defendant appealed the life sentence directly to this Court as a matter of right pursuant to G.S. 7A-27(a). On 21 October 1982, we allowed defendant's motion to bypass the Court of Appeals on the burglary charge pursuant to G.S. 7A-31(b).

*Rufus L. Edmisten, Attorney General, by Blackwell M. Brogden, Jr., Assistant Attorney General, and Michael R. Morgan, Assistant Attorney General, for the State.*

*Antonia Lawrence for defendant-appellant.*

BRANCH, Chief Justice.

[1] By his first assignment of error, defendant challenges the admissibility of the victim's in-court identification testimony on the

ground that it was tainted by an impermissibly suggestive out-of-court identification procedure.

We have consistently held that an in-court identification is competent, even if improper pretrial identification procedures have taken place, so long as it is determined on *voir dire* that the in-court identification is of independent origin. *State v. Jackson,* 306 N.C. 642, 295 S.E. 2d 383 (1982); *State v. Yancey,* 291 N.C. 656, 231 S.E. 2d 637 (1977); *State v. Henderson,* 285 N.C. 1, 203 S.E. 2d 10 (1974). Defendant recognizes this rule, but asserts that the trial court erred in concluding that the victim's in-court identification was independent of any influence other than her observations on the night of the crime.

First we consider the question of whether a constitutionally impermissible pretrial identification procedure took place in instant case. On 1 December 1981, Officer Newell exhibited a photographic array to Ms. Rogers containing the photographs of seven black males, many of them wearing black caps or toboggans. Although defendant does not refer to any specific evidence which tends to indicate that the array or the circumstances surrounding the procedure were impermissibly suggestive, we presume that defendant bases his argument on the fact that defendant's picture was the only photograph depicting an individual wearing both a black toboggan *and* a dark coat, thereby fitting the details of the earlier description given by Ms. Rogers.

The trial judge specifically found that the photographic identification procedure employed by Officer Newell at the Nash General Hospital was free of constitutional error. When a trial court's findings of fact are supported by competent evidence, they are binding upon this Court. *State v. Yancey,* 291 N.C. 656, 662, 231 S.E. 2d 637, 641 (1977); *State v. Tuggle,* 284 N.C. 515, 520, 201 S.E. 2d 884, 887 (1974).

We are of the opinion that the *voir dire* evidence clearly supports Judge Allsbrook's findings. The mere fact that defendant was the only individual in the photographs wearing a dark coat is insufficient to overturn the trial judge's specific finding that the identification procedure was not suggestive or conducive to irreparable mistaken identification. The very fact that the victim was unable to make a positive identification of defendant from the

photographs belies defendant's assertion that the procedure was impermissibly suggestive.

Even were we to accept defendant's position that the pretrial identification procedure was constitutionally infirm, the trial court properly admitted the in-court identification of defendant if the in-court identification was of an independent origin. *United States v. Wade*, 388 U.S. 218, 18 L.Ed. 2d 1149, 87 S.Ct. 1926 (1967).

The trial judge held separate *voir dire* examinations of both Ms. Rogers and Officer Newell before admitting Rogers' testimony identifying defendant as her assailant. Ms. Rogers testified that she observed defendant for a period of at least three to four minutes while he stood on her lighted front porch. Although defendant's face was partially covered by the toboggan, Ms. Rogers was able to see his face, eyes and mouth. Furthermore, she gave a description of her assailant to Officer Newell on 30 November 1981 when he interviewed her in the hospital.

The trial court specifically found as a fact that "the identification of the defendant by Ms. Rogers was based solely upon her observation of the perpetrator of this offense at her home on the night of November 24, 1981; and that this in-court identification was in no way influenced by the photographic identification procedure conducted by Officer Newell at Nash General Hospital on December 1, 1981." This finding is supported by competent evidence elicited from the witnesses on *voir dire* and is therefore conclusive upon this Court. *State v. Yancey, supra.* We hold that even if the photographic array had been impermissively suggestive, the trial judge's ruling that the in-court identification was independent in origin and therefore admissible was correct.

[2] Defendant advances an additional argument in support of his position that the in-court identification testimony was improperly admitted. Relying on *State v. Miller*, 270 N.C. 726, 154 S.E. 2d 902 (1967), defendant contends that Ms. Rogers' testimony identifying defendant as her assailant should have been excluded because it was inherently incredible and unworthy of belief. For the reasons hereafter stated, we find *Miller* totally inapposite to instant case and reject defendant's argument that the victim's testimony was inherently incredible.

In *Miller*, the only evidence connecting the defendant with the crime for which he was charged was the testimony of a witness who identified the defendant in a lineup as one of the perpetrators of the crime. The witness testified that he viewed the defendant at the scene of the crime at night from a distance of approximately 286 feet. Other than this distant glance, the witness had never seen the man before and could not describe the clothes he wore or the color of his hair. On the basis of this testimony, this Court held that the distance was too great for an observer to note and store in memory features which would enable him, six hours later, to identify a complete stranger with the degree of certainty which would justify the submission of the defendant's guilt to the jury. The Court went on to note, however, that "[w]here there is a *reasonable possibility of observation sufficient to permit subsequent identification,* the credibility of the witness' identification of the defendant is for the jury, . . . ." *Id.* at 732, 154 S.E. 2d at 906 (emphasis added).

We are of the opinion that in this case, Ms. Rogers was afforded sufficient opportunity to observe her assailant that she might subsequently make an accurate identification of him. The victim's limited opportunity for observation goes to the *weight* the jury might place upon her identification rather than its admissibility. The trial court correctly admitted the in-court identification testimony of the prosecuting witness and this assignment of error is overruled.

[3] Defendant also assigns as error the admission into evidence of a statement he made to Officer Newell on 2 December 1981.

At trial, defendant unequivocally testified on *voir dire* and on direct examination before the jury that he signed only a blank piece of paper and that he did not make any statement to the police admitting his involvement in the crime. Officers Newell and Pernell testified that after executing a waiver of rights form, defendant did in fact make a statement to them on 2 December confessing to the rape of Ms. Rogers. The trial court resolved this conflict in the evidence and found as a fact that defendant made this statement to the officers on 2 December in the manner described by them. The court's conclusion, properly supported by the findings of fact, was that defendant made the statement freely and voluntarily after a knowing and understanding waiver of his constitutional rights.

Defendant now argues for the first time on appeal that the confession was erroneously admitted because he did not have sufficient opportunity to execute a knowing and intelligent waiver. Defendant hypothesizes that "[o]nly an individual of the highest intelligence, possessing extreme emotional control, could have been able to contemplate the consequences of his actions or consider the seriousness of the situation at hand, within the time span and under the circumstances described by Officer Newell."

We decline to consider this theory for the reasons stated in *State v. Hunter*, 305 N.C. 106, 286 S.E. 2d 535 (1982). In that case, we held that "when there is an objection to the admission of a confession or a motion to suppress a confession, counsel must specifically state to the court before voir dire evidence is received the basis for his motion to suppress or for his objection to the admission of the evidence." *Id.* at 112, 286 S.E. 2d 539. *See also State v. Oxendine*, 305 N.C. 126, 286 S.E. 2d 546 (1982).

At trial, defendant objected to the admission of the confession on the sole ground that he had in fact made no statement to the police. The trial court chose to accept the officers' contrary testimony and, after entering appropriate findings of fact and conclusions of law, correctly overruled defendant's objection on the theory advanced. Defendant cannot attack the admissibility of his confession in the appellate division upon a theory entirely different from that relied upon at trial. *State v. Hunter*, at 112-13, 286 S.E. 2d at 539; *State v. Oxendine* at 136, 286 S.E. 2d at 551. This assignment of error is dismissed.

In defendant's trial and convictions, we find no error.

No error.