STATE OF NORTH CAROLINA v. JAMES ERNEST GREENE

No. 8425SC460

(Filed 2 April 1985)

1. **Criminal Law § 76.10— attack on confession—theory not used at trial—not permitted**

In a prosecution for second-degree murder where defendant objected to the admission of his statement to officers only on the basis of accuracy, he could not argue on appeal that the jury should have been instructed that the statement could only be used for impeachment or that the statement should not have been read to the jury after the State had argued that it could be used to refresh the officer's recollection.

2. **Homicide § 21.9— involuntary manslaughter—evidence sufficient**

In a prosecution for murder in which defendant was convicted of involuntary manslaughter, the court properly denied defendant's motion to set aside the verdict and for a new trial where the evidence showed that defendant, who had been drinking, pointed a fully loaded high powered rifle at David Whistine with the hammer cocked and the safety off; and that when Buddy Whistine

tried to push or pull the barrel of the rifle away from David, defendant jerked or "slung" the rifle out of Buddy's grasp, keeping the hammer fully cocked and safety off; and that defendant in so doing shot and killed Buddy Whistine.

3. **Criminal Law §§ 102.5, 169— admission of evidence—no objection or similar evidence admitted without objection—control of cross-examination—no error**

In a prosecution for murder resulting in an involuntary manslaughter conviction, there was no prejudicial error in a witness's reference to defendant's house as the "crime scene" where the reference was repeated later without objection, no prejudicial error in the prosecutor asking a witness if defendant had made a statement after he was advised of his rights when defendant did not object at trial, and no abuse of discretion in the court's control of the cross-examination of defendant.

Chief Judge HEDRICK dissenting.

APPEAL by defendant from *Lupton, Judge.* Judgment entered 9 December 1983 in Superior Court, CALDWELL County. Heard in the Court of Appeals 4 February 1985.

*Attorney General Rufus L. Edmisten by Assistant Attorney General Charles M. Hensey for the State.*

*Wilson and Palmer by W. C. Palmer for defendant appellant.*

COZORT, Judge.

Defendant was indicted for second-degree murder. The jury convicted him of involuntary manslaughter. The primary questions for our consideration are whether the trial court erred by allowing the State to introduce into evidence a statement made by the defendant during a custodial interrogation without instructing the jury that the statement was to be considered only for impeachment purposes, and whether the trial court erred by denying defendant's motion to set aside the guilty verdict on the ground that the verdict was contrary to the weight of the evidence. We find no error. The facts follow.

On the night of 17 June 1983 the defendant, defendant's wife, and David Whistine went to an establishment in Wilkesboro where the defendant and Whistine shot pool and drank beer. The three of them then went to a place called Country Boys near Lenoir where the defendant and Whistine continued drinking beer. Around midnight, as the three prepared to leave Country Boys, a scuffle occurred in the parking lot between the defendant and

Whistine. The defendant nicked Whistine on the back a few times with a knife, and Whistine hit the defendant in the chin with a set of brass knuckles. The defendant's wife then drove the defendant to his home a few miles away. A short time later, Whistine left Country Boys in a taxicab.

After the defendant returned home, he walked a short distance to the home of Johnny Tilson, who was David Whistine's brother-in-law and at whose house David had been staying, along with his brother, Buddy Whistine. The defendant went to the Tilson home armed with a high-powered rifle, and according to the State's evidence, threatened to kill David, who had not yet returned from Country Boys. As he walked away from the Tilson house back toward his house, the defendant fired one shot in the air. Buddy Whistine left the Tilson house and walked over to the defendant's house to talk to the defendant. There was no argument or confrontation between Buddy and the defendant.

When David Whistine arrived at the Tilson home, he had a disagreement with Johnny Tilson and his sister, Tilson's wife, about bringing liquor into the Tilson house. He left the Tilson house and walked the short distance to the defendant's home, carrying a bottle of liquor. When David reached the defendant's house, the altercation between the defendant and David began again, with David kicking at the defendant, and the two of them cursing at each other. The defendant went in the back door of his house, retrieved the rifle, came back and stood in or just outside the doorway with the screen door open, and pointed the gun at David. Buddy, who was standing on the carport next to the open door, grabbed the rifle by the barrel. The defendant jerked the rifle out of Buddy's grasp. Buddy grabbed the rifle barrel a second time. According to David Whistine's testimony, the defendant "slung" the rifle loose from Buddy's grasp and fired the rifle twice, with one of the shots striking and killing Buddy. The defendant testified that Buddy pulled the rifle barrel towards him and that the rifle accidentally discharged. He testified that he fired a second shot at David's feet and another shot over David's head. David started after the defendant, and the defendant hit David over the head with the rifle barrel. When law enforcement officers arrived to investigate the shooting, they found the rifle had been fully reloaded. The defendant gave a statement to a detective at the Sheriff's Department. A firearms and ballistics

expert testified that the rifle used by the defendant could not be fired unless the hammer was pulled all the way back and a safety catch at the base of the rifle was completely pushed down into a slot inside the rifle.

[1] The defendant's first argument on appeal concerns whether it was proper for the trial court to allow a witness for the State, one of the investigating officers, to read to the jury the complete transcript of the statement given by the defendant to that officer, without the trial court instructing the jury that the statement could be used only for the purpose of impeachment. The defendant also argues that it was error to allow the full transcript to be read to the jury by the witness when the State had argued at trial that the transcript could be used to refresh the officer's recollection of what the defendant told him. A close reading of the transcript of the trial below shows the defendant is entitled to no relief.

The defendant took the stand in his own defense, as well as offering other witnesses. He gave his version of the scuffle at Country Boys and the altercation at his house which resulted in Buddy Whistine's death. At the conclusion of the defendant's evidence, the State offered rebuttal evidence, including the testimony of Marshall Clontz, a Caldwell County Sheriff's Department detective who interviewed the defendant at 3:00 the morning Buddy Whistine was shot. The State offered Clontz's testimony concerning his interview with the defendant apparently to show that defendant's description at the trial of the events occurring on 18 June 1983 differed in several respects from statements he made to Clontz shortly after the shooting. When the defendant objected to the witness testifying about the defendant's statement, the jury was sent out and the following transpired:

THE COURT: What is the basis for your objection, Mr. Palmer?

MR. PALMER [DEFENDANT'S COUNSEL]: Well, if your Honor please, the District Attorney has asked him if he has made a statement and if it were transcribed. If he is going to use some transcription of it the State's got to show that the transcription is accurate.

MR. MCKINNEY [STATE'S ATTORNEY]: I am asking him what he told him. He can use anything he wants to to refresh his recollection.

MR. PALMER: That is not the only objection, your Honor. My client, according to the evidence so far, was under arrest at that time.

MR. MCKINNEY: It wouldn't make any difference if he was under arrest. He has already testified any statement he made can be used against him for impeachment purposes.

*    *    *    *

THE COURT: Objection overruled. case of *U S Against Harris* held that statements of the defendant could be used for impeachment purposes after they testify. Let the jury come in.

After the jury returned, the following questions and answers were stated by the State's attorney and Officer Clontz, respectively:

Q. Officer Clontz, what was the first thing Mr. Greene said to you on the morning of June 18, 1983?

A. At approximately 3 A M Mr. Greene made the following statement: "I guess I am at fault. Did the boy die? I hate that, but there is no way I could help it. A man kicks your door down, what must you do?"

Q. Did you thereafter after you advised him of his rights make any other statements?

A. Yes, sir. I had asked him to sign the Departmental Waiver form. He said, "Let me sign this [sic]. Said, I should not have killed. I have never done anything like this before. I don't want to sign it now. Give me time."

Q. Did he proceed to make a statement after you advised him of his rights?

A. Yes; he did.

Officer Clontz then read the entire statement to the jury. The defendant did not make any objection during the witness's reading of the statement, nor did he request any instruction on

impeachment before, during, or after the reading of the statement. Furthermore, the defendant requested no instruction on impeachment during the jury instruction conference, and he requested no instruction on impeachment after the charge when the trial court again offered both counsel an opportunity for further instruction requests.

Defendant at trial first objected to the admission of the statement apparently on the basis of whether the statement was accurate. He then hints at questioning whether the statement was voluntary by referring to the defendant being under arrest at the time, but he did not object on those grounds. He did not pursue the objection on the ground of the accuracy of the statement, and he did not object or request a voir dire on the voluntariness of the statement. Thus, his only objection at trial is on whether the statement was accurate. Therefore, the questions he now raises on appeal are being raised for the first time.

In *State v. Ricks*, 308 N.C. 522, 302 S.E. 2d 770 (1983), the North Carolina Supreme Court held that a defendant cannot attack the admissibility of his confession in the appellate division upon a theory entirely different from that relied upon at trial. In that case Chief Justice Branch wrote: "At trial, defendant unequivocally testified on *voir dire* and on direct examination before the jury that he signed only a blank piece of paper and that he did not make any statement to the police admitting his involvement in the crime. . . . Defendant now argues for the first time on appeal that the confession was erroneously admitted because he did not have sufficient opportunity to execute a knowing and intelligent waiver. . . . We decline to consider this theory for the reasons stated in *State v. Hunter*, 305 N.C. 106, 286 S.E. 2d 535 (1982)." *Id.* at 528-29, 302 S.E. 2d at 773-74.

In *Hunter*, Chief Justice Branch wrote: "The theory upon which a case is tried in the lower court must control in construing the record and determining the validity of the exceptions. . . . A defendant, represented by counsel, cannot sit silently by at trial and object to the admission of evidence for the first time on appeal. [Citation omitted.] [W]hen a confession is challenged on other grounds which are not clearly brought to the attention of the trial judge, a specific objection or explanation pointing out the reason for the objection or motion to suppress is necessary. [Citation

omitted.] In order to clarify any misunderstanding about the duty of counsel in these matters, we specifically hold that when there is an objection to the admission of a confession or a motion to suppress a confession, counsel must specifically state to the court before voir dire evidence is received the basis for his motion to suppress or for his objection to the admission of the evidence." *State v. Hunter, supra,* at 112, 286 S.E. 2d at 539.

In the case *sub judice,* we hold that the principles enunciated in *Ricks* and *Hunter* are controlling, and we therefore decline to consider the theories now advanced by defendant.

[2] The other primary question raised by defendant is whether his motion to set aside the verdict should have been allowed by the trial court. The proper motion for the defendant to have made at that stage of the criminal proceeding was either a motion to dismiss under G.S. 15A-1227(a)(3) or a motion for appropriate relief under G.S. 15A-1414(b)(2). Under either motion, the test is whether there is substantial evidence of each essential element of the offense charged or of a lesser offense included therein and of the defendant's being the perpetrator of the offense. The evidence is to be considered in the light most favorable to the State, with the State being entitled to every reasonable intendment and inference to be drawn therefrom, and the jury resolving contradictions and discrepancies in the evidence. *State v. Earnhardt,* 307 N.C. 62, 296 S.E. 2d 649 (1982).

The defendant was convicted of involuntary manslaughter. "The elements of involuntary manslaughter are: (1) unlawful killing of a human being, (2) without malice, (3) without premeditation and deliberation, and (4) without intention to kill or inflict serious bodily injury. [Citation omitted.] 'It seems that with few exceptions, it may be said that every unintentional killing of a human being proximately caused by a wanton or reckless use of firearms, in the absence of intent to discharge the weapon . . . and under circumstances not evidencing a heart devoid of a sense of social duty, is involuntary manslaughter.' [Citation omitted.]" *State v. Best,* 59 N.C. App. 96, 97, 295 S.E. 2d 774, 775 (1982). Involuntary manslaughter is the "'unintentional killing of a human being without either express or implied malice (1) by some unlawful act not amounting to a felony *or naturally dangerous to human life,* or (2) by an act or omission constituting culpable negligence.'"

*State v. Wilkerson*, 295 N.C. 559, 579, 247 S.E. 2d 905, 916 (1978), quoting the dissent in *State v. Wrenn*, 279 N.C. 676, 687, 185 S.E. 2d 129, 136 (1971).

If the killing of Buddy Whistine was purely accidental and was not caused by the criminally negligent actions of defendant, as defendant contends, then it was error for the trial court to deny the defendant's motion. After a careful review of the evidence, we hold that there was sufficient evidence of criminally negligent acts by the defendant resulting in the killing of Buddy Whistine and that the trial court correctly denied the defendant's motion to set aside the verdict and for a new trial. The State's evidence showed the defendant, who had been drinking, pointed a fully loaded, high-powered rifle, cocked and with the safety off, at David Whistine, and that when Buddy Whistine tried to push or pull the barrel of the rifle in a direction away from David, the defendant jerked or "slung" the rifle out of Buddy's grasp, keeping the hammer fully cocked and the safety off, and in so doing, shot and killed Buddy Whistine. This is sufficient evidence of criminal negligence in the defendant's handling of the loaded rifle which resulted in Buddy Whistine's death. This assignment of error is overruled.

[3] The defendant raises three other arguments on appeal. First, he contends that it was prejudicial error to allow a State's witness to invade the province of the jury by describing the defendant's residence as the "crime scene." Although the defendant objected to this reference to his residence as the "crime scene," he did not object to this same reference later in the trial. Assuming *arguendo* that the reference to "crime scene" was prejudicial, "[i]t is well recognized in this jurisdiction that the admission of incompetent evidence is cured when substantially the same evidence is . . . thereafter admitted without objection." *State v. Covington*, 290 N.C. 313, 339, 226 S.E. 2d 629, 647 (1976). Next, he argues that it was error for the prosecuting attorney to ask a witness if the defendant had made a statement after he was advised of his rights, when there was no other independent evidence that the defendant had been advised of his rights. Defendant did not object to this question at the trial below. These assignments of error are frivolous and are hereby dismissed.

Defendant lastly contends the trial court erred by allowing the State to question the defendant on cross-examination in a repetitive and argumentative manner. Our review of the record shows that the trial court sustained some of the defendant's counsel's objections to the State's questions. Defendant has failed to show that the trial court abused its discretion in controlling the cross-examination of the defendant. *See State v. Satterfield*, 300 N.C. 621, 268 S.E. 2d 510 (1980). This assignment of error is overruled.

In defendant's trial and conviction, we find no error.

No error.

Judge JOHNSON concurs.

Chief Judge HEDRICK dissents.

Chief Judge HEDRICK dissenting.

I agree with the majority that there is sufficient evidence in the record to support the verdict finding defendant guilty of involuntary manslaughter, but because, in my opinion, defendant has been convicted of a crime with which he was not charged, I vote to arrest judgment. I realize that for many years in this State we have assumed that involuntary manslaughter is a lesser included offense of murder. I have been unable to discover any Supreme Court decision that has specifically held that involuntary manslaughter is a lesser included offense of murder, but the Court has approved on numerous occasions the submission of involuntary manslaughter as a possible verdict in cases wherein the defendants were charged with murder. In at least two cases, *State v. Boyd*, 61 N.C. App. 238, 300 S.E. 2d 578, *disc. rev. denied*, 308 N.C. 545, 304 S.E. 2d 238 (1983) and *State v. Hudson*, 54 N.C. App. 437, 283 S.E. 2d 561 (1981), this Court has specifically said that involuntary manslaughter is a lesser included offense of murder. In at least three other cases, *State v. Fournier*, 73 N.C. App. 465, 326 S.E. 2d 84 (1985), *State v. Mercado*, 72 N.C. App. 521, 325 S.E. 2d 313 (1985), and *State v. Cason*, 51 N.C. App. 144, 275 S.E. 2d 221 (1981), this Court has said that involuntary manslaughter is *not* a lesser included offense of murder, but

in no case has this Court or the Supreme Court applied such a rule.

In *State v. Weaver*, 306 N.C. 629, 295 S.E. 2d 375 (1982), the Supreme Court held that taking indecent liberties with a child under the age of sixteen is not a lesser included offense of first degree rape of a child of the age of twelve or less. In so holding, Justice Carlton elaborated on just how we must determine whether one crime is a lesser included offense of another crime:

> It might be argued that *under certain factual circumstances* taking indecent liberties with a child is a lesser included offense of first-degree rape. . . .

> We do not agree with the proposition that the *facts* of a particular case should determine whether one crime is a lesser included offense of another. Rather, the *definitions* accorded the crimes determine whether one offense is a lesser included offense of another crime. *State v. Banks*, 295 N.C. 399, 415-16, 245 S.E. 2d 743, 754 (1978). In other words, all of the essential elements of the lesser crime must also be essential elements included in the greater crime. If the lesser crime has an essential element which is not completely covered by the greater crime, it is not a lesser included offense. The determination is made on a *definitional*, not a factual basis.

*Id.* at 635, 295 S.E. 2d at 378-79 (emphasis original). Since *Weaver*, the Supreme Court has repeatedly applied the definitional test in determining whether one offense is a lesser included offense of another. *See, e.g., State v. Warren*, 309 N.C. 224, 306 S.E. 2d 446 (1983); *State v. Freeman*, 308 N.C. 502, 302 S.E. 2d 779 (1983). *See also State v. Odom*, 307 N.C. 655, 300 S.E. 2d 375 (1983); *State v. Bates*, 70 N.C. App. 477, 319 S.E. 2d 683 (1984).

Applying the definitional rule set out in *Weaver* to the question whether involuntary manslaughter is a lesser included offense of murder requires that we first define the two crimes. Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation. *State v. Payne*, 213 N.C. 719, 197 S.E. 573 (1938); *State v. Bondurant*, 309 N.C. 674, 309 S.E. 2d 170 (1983). Involuntary manslaughter is "the unintentional killing of a human being without either express or

implied malice (1) by some unlawful act not amounting to a felony or naturally dangerous to human life, or (2) by an act or omission constituting culpable negligence." *State v. Watson*, 310 N.C. 384, 398, 312 S.E. 2d 448, 457 (1984). *See also State v. Wilkerson*, 295 N.C. 559, 247 S.E. 2d 905 (1978). It is readily apparent that the definition of involuntary manslaughter contains an element not present in the definition of murder: the commission of some unlawful or culpably negligent act. Consequently, the crime of involuntary manslaughter is not a lesser included offense of murder.

I recognize that I suggest a radical departure from a well-established practice, but I do nothing more than follow the rule set out in *Weaver*. The effects of the holding herein suggested can only be salutary. I perceive few if any harmful results.