STATE OF NORTH CAROLINA v. EDDIE GLENN BOWDEN, Defendant

No. COA05-635

(Filed 6 June 2006)

**1. Search and Seizure— motion to suppress—checkpoint—reasonable articulable suspicion—investigatory stop**

The trial court did not err in a habitual driving while impaired and driving with a revoked license case by denying defendant's motion to suppress all evidence obtained as a result of an officer's encounter with defendant, because: (1) even though the trial court failed to make findings of fact in connection with the denial of the motion to suppress, defendant did not present any evidence of his own and no apparent conflict arose from the State's evidence which was comprised solely of the officer's testimony; (2) defendant did not argue the pertinent checkpoint was unconstitutional, and thus, the trial court had no reason to address the issue and it will not be addressed for the first time on appeal; (3) whether the checkpoint complied with N.C.G.S. § 20-16.3A is immaterial when the checkpoint was a driver's license and registration checkpoint and not an impaired driving checkpoint; and (4) assuming arguendo that an investigatory stop occurred, the totality of circumstances justified the officer's pursuing and stopping defendant's vehicle to inquire as to why he turned away prior to the checkpoint including the late hour, the sudden braking of the truck when defendant crested the hill and could see the checkpoint, the abruptness of defendant's turn into the nearest apartment complex parking lot, and defend-

STATE v. BOWDEN

[177 N.C. App. 718 (2006)]

ant's behavior in first backing the truck into one space, pulling out and proceeding toward the parking lot exit, and then reparking when he spotted the patrol car approaching him.

**2. Jurisdiction— superior court—habitual DWI a substantive offense—misdemeanor DWI—driving with revoked license**

The superior court had jurisdiction to conduct a trial on defendant's misdemeanor DWI and driving with a revoked license charges without a trial first in district court, because: (1) habitual impaired driving is a substantive offense, and not a status offense as defendant would prefer; (2) the mere fact that a statute is directed at recidivism does not prevent the statute from establishing a substantive offense; and (3) defendant concedes that if the habitual DWI statute creates a substantive offense, then the superior court possessed jurisdiction to try him on the misdemeanor offenses set out in the same indictment with the habitual DWI charge.

Appeal by defendant from judgment entered 8 December 2004 by Judge John O. Craig III in Guilford County Superior Court. Heard in the Court of Appeals 30 November 2005.

*Attorney General Roy Cooper, by Assistant Attorney General Patricia A. Duffy, for the State.*

*M. Alexander Charns for defendant-appellant.*

GEER, Judge.

Defendant Eddie Glenn Bowden appeals his convictions for habitual driving while impaired and driving with a revoked license. On appeal, defendant principally contends that the trial court erred in denying his motion to suppress. Although defendant argues that the police lacked reasonable articulable suspicion to stop him, the Supreme Court's opinion in *State v. Foreman*, 351 N.C. 627, 527 S.E.2d 921 (2000), addressing almost identical circumstances, holds otherwise. The trial court, therefore, properly denied defendant's motion to suppress.

Facts

The State's evidence tended to show the following facts. On the evening of 5 February 2003, the police were conducting a driver's license checkpoint on Florida Street in Greensboro, North Carolina. Florida Street is a two-lane road that intersects with Holden Road at the bottom of a hill. The checkpoint was not visible to motorists approaching on Holden Road until after they crested the hill about

250 feet away. One police officer, Officer Goodykoontz, sitting in a patrol car, was assigned to identify drivers on Holden Road who might be trying to elude the checkpoint.

At about 11:30 p.m., Officer Goodykoontz heard the sound of an engine revving loudly and then saw a pickup truck crest the hill on Holden Road and descend rapidly towards the checkpoint. As he watched, the truck braked hard, causing the front headlights to dip low. The truck then made an abrupt right-hand turn into the parking lot of the nearest apartment complex. Officer Goodykoontz followed in his patrol car with the blue lights turned off, arriving at the entrance of the parking lot approximately 30 seconds later.

Once he was in the parking lot, Officer Goodykoontz spotted a pickup matching the one he had just seen. As he approached in his patrol car, he saw the truck pull out of a parking space into which it had apparently backed, travel towards the parking lot's exit, but then drive head first into a new parking space as the patrol car drew near. Officer Goodykoontz pulled his patrol car behind the truck and activated his blue lights. He walked up to the truck and asked the occupant for his driver's license and registration.

In response, defendant, who was the truck's sole occupant, stated that another person named "Marcus" had been driving the truck, but that he had just left. Asked to explain further, defendant claimed that he had just come out of one of the apartments in the complex and that Marcus had asked him to drive the pickup to Marcus' girlfriend's apartment elsewhere in the complex. He stated that the girlfriend's apartment was "around the corner, but he didn't know which apartment."

As this conversation took place, Officer Goodykoontz noticed that defendant's speech was slurred, his eyes were glassy and red, and he smelled of alcohol. The officer asked defendant to step out of the truck. When defendant complied, Officer Goodykoontz observed that defendant was unsteady on his feet and was wavering from side to side. In order to check defendant's story, Officer Goodykoontz asked him to identify the apartment he had left when he went to move the truck for Marcus. Defendant then denied being in any apartment, claiming that he had reached the apartment complex on foot from a restaurant about two miles away.

When Officer Goodykoontz asked defendant how much he had had to drink, he replied that he had had "a few." Officer Goodykoontz then asked defendant to step to the sidewalk so that he could perform field

**STATE v. BOWDEN**

[177 N.C. App. 718 (2006)]

sobriety tests. At that point, defendant stuck out his hands towards the officer and said, "You might as well arrest me. I'm not doing any tests."

Officer Goodykoontz arrested defendant for driving while impaired ("DWI"). He was transported to the police department, read his *Miranda* rights, and asked to take an Intoxilyzer test, which he refused. He was later indicted for DWI, habitual DWI under N.C. Gen. Stat. § 20-138.5 (2005), and driving with a revoked license under N.C. Gen. Stat. § 20-28(a) (2005). A jury convicted him of all three crimes, and the trial judge imposed a consolidated sentence of 24 to 29 months. Defendant filed a timely appeal.

## Motion to Suppress

**[1]** Defendant first assigns error to the trial court's denial of his motion to suppress all evidence obtained as a result of Officer Goodykoontz' encounter with defendant. In reviewing a trial court's ruling on a motion to suppress, we first determine whether the trial court's findings of fact are supported by competent evidence. *State v. Smith*, 160 N.C. App. 107, 114, 584 S.E.2d 830, 835 (2003). In this case, however, the trial court failed to make findings of fact in its ruling upon the motion to suppress, an omission that defendant contends is reversible error.

When the trial court conducts an evidentiary hearing regarding the competency of the evidence, the trial court is required to make findings of fact if there is a conflict in the evidence. *State v. Steen*, 352 N.C. 227, 237, 536 S.E.2d 1, 7 (2000), *cert. denied*, 531 U.S. 1167, 148 L. Ed. 2d 997, 121 S. Ct. 1131 (2001). When, however, there is no conflict in the evidence, findings are not required, although it is preferable for the trial court to make them. *Id.* In the event there is no conflict in the evidence and the trial court makes no findings, " 'the necessary findings are implied from the admission of the challenged evidence.' " *Id.* (quoting *State v. Vick*, 341 N.C. 569, 580, 461 S.E.2d 655, 661 (1995)).

Here, defendant did not present any evidence of his own, and no apparent conflict arose from the State's evidence, which was comprised solely of Officer Goodykoontz' testimony. The trial court did not, therefore, commit reversible error by failing to make findings of fact in connection with the denial of the motion to suppress.

Defendant's assignment of error regarding the merits of the motion to suppress states: "The trial court committed error by not granting defendant's motion to suppress the stop of his vehicle on the grounds that the stop was without probable cause or reasonable articulable suspicion . . . ." In his brief, however, defendant argues first that the trial

court erred in failing to make the findings of fact required by *State v. Rose*, 170 N.C. App. 284, 291-93, 612 S.E.2d 336, 341, *appeal dismissed and disc. review denied*, 359 N.C. 641, 617 S.E.2d 656 (2005), in determining the constitutionality of a checkpoint. Defendant did not, however, argue before the trial court that the checkpoint was unconstitutional. The trial court, therefore, had no reason to address the issue. Further, because defendant did not argue the constitutionality of the checkpoint below, we do not address that question on appeal. *State v. Hunter*, 305 N.C. 106, 112, 286 S.E.2d 535, 539 (1982) ("[A] constitutional question which is not raised and passed upon in the trial court will not ordinarily be considered on appeal.").

Alternatively, defendant argues that the checkpoint violated N.C. Gen. Stat. § 20-16.3A (2005), which sets out the requirements for "impaired driving checks of drivers of vehicles on highways and public vehicular areas." The State argues that the legality of the checkpoint does not matter in light of the fact defendant did not stop at the checkpoint. Since, however, the evidence in the record is undisputed that the checkpoint at issue was a driver's license and registration checkpoint and not an impaired driving checkpoint, whether the checkpoint complied with N.C. Gen. Stat. § 20-16.3A is immaterial, and we need not address the State's argument.

The final issue with respect to the motion to suppress is whether, under *State v. Foreman*, 351 N.C. 627, 527 S.E.2d 921 (2000), Officer Goodykoontz had a reasonable, articulable suspicion to stop defendant. *Foreman* "reaffirmed the long-standing rule that [w]hen an officer observes conduct which leads him reasonably to believe that criminal conduct may be afoot, he may stop the suspicious person to make reasonable inquiries." *Id.* at 630, 527 S.E.2d at 923 (internal quotation marks omitted) (alteration original). To justify a stop, the officer " 'must be able to point to specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant [the] intrusion.' " *Id.* (quoting *State v. Thompson*, 296 N.C. 703, 706, 252 S.E.2d 776, 779, *cert. denied*, 444 U.S. 907, 62 L. Ed. 2d 143, 100 S. Ct. 220 (1979)) (alteration original).

*Foreman* involved facts remarkably similar to those of this case. The police in *Foreman* were operating a DWI checkpoint in the middle of the night. They had posted signs warning of the checkpoint one-tenth of a mile prior to the actual stop, and they had an officer assigned to watch for vehicles that appeared to be avoiding the checkpoint. A small red car approached and made a quick, but legal, left turn immediately after passing the sign that warned of the checkpoint. The police officer

STATE v. BOWDEN

[177 N.C. App. 718 (2006)]

began following the car, without attempting to stop it, and watched it make another quick left hand turn. He lost sight of it for a moment, and then found it parked in a residential driveway, with its lights and engine turned off and the doors closed. The officer turned on his bright lights and shined them on the car, which enabled him to see people crouching down in the car and not moving. When backup arrived, the officer approached the vehicle and observed open containers of alcohol. Upon investigating further, he found that the driver smelled of alcohol and was unsteady on her feet. She was subsequently convicted of DWI.

The *Foreman* Court first held that the officer did not stop defendant's vehicle at any point because the defendant voluntarily parked her car and remained in the car until the officer approached. *Id.* at 630, 527 S.E.2d at 923. "Therefore, defendant was not 'seized' by the police officer until at least that point [when the officer approached the vehicle]." *Id.* See also State v. Johnston, 115 N.C. App. 711, 714, 446 S.E.2d 135, 138 (1994) (where defendant got out of his car and appeared unsteady, and officer asked why he turned off of the road prior to the license check, this Court noted that a "seizure does not occur simply because a police officer approaches an individual and asks a few questions. Communications between police and citizens involving no coercion or detention are outside the scope of the fourth amendment" (internal quotation marks and citation omitted)).

In this case, defendant contended at trial that the officer's use of his blue lights and his parking of the patrol car so as to block defendant's car resulted in a stop. Even if, however, we assume *arguendo* that a stop occurred, the remaining holding of *Foreman* compels the conclusion that the trial court properly denied the motion to suppress in this case.

Although the Supreme Court in *Foreman* had concluded that no stop occurred, it proceeded to reverse the Court of Appeals' conclusion that the legal turn immediately preceding the checkpoint, without more, did not justify an investigatory stop. The Court stated: "[W]e hold that it is reasonable and permissible for an officer to monitor a checkpoint's entrance for vehicles whose drivers may be attempting to avoid the checkpoint, and it necessarily follows that an officer, *in light of and pursuant to the totality of the circumstances* or the checkpoint plan, may pursue and stop a vehicle which has turned away from a checkpoint within its perimeters for reasonable inquiry to determine why the vehicle turned away." *Foreman*, 351 N.C. at 632-33, 527 S.E.2d at 924 (emphasis added).

In this case, the totality of the circumstances justified the officer's pursuing and stopping defendant's vehicle to inquire as to why he turned away prior to the checkpoint. In addition to the fact of defendant's legal turn immediately prior to the checkpoint, the following facts combined to allow Officer Goodykoontz to make a reasonable inquiry to determine whether defendant was trying to evade the checkpoint: (1) the late hour; (2) the sudden braking of the truck when defendant crested the hill and could see the checkpoint, to the point that the headlights dipped as the front of the truck dove towards the street; (3) the abruptness of defendant's turn into the nearest apartment complex parking lot; and (4) defendant's behavior in first backing the truck into one space, pulling out and proceeding towards the parking lot exit, and then re-parking when he spotted the patrol car approaching him. Under the totality of these circumstances, any investigatory stop that Officer Goodykoontz may have performed was proper. Therefore, the trial court correctly ruled that the evidence gleaned from the encounter between defendant and the officer should not be suppressed.

Defendant also contends that if the evidence from his encounter with Officer Goodykoontz had been suppressed, it would have been proper for the trial court to grant his motion to dismiss the charges for insufficiency of the evidence. Since we find that the evidence was properly admitted, we need not reach this argument. Defendant, we note, does not contend that his motion to dismiss should have been granted even in the event that Officer Goodykoontz' testimony was properly admitted.

## Jurisdiction

[2] Defendant's final argument is that the superior court lacked jurisdiction to conduct a trial on defendant's misdemeanor DWI and driving with a revoked license charges without a trial first in district court. Defendant contends that habitual DWI is a status and not a substantive felony offense and therefore, those misdemeanor charges were not properly joined for trial in superior court. *See* N.C. Gen. Stat. § 7A-271(a)(3) (2005) (providing that superior court has jurisdiction to try a misdemeanor charge if properly consolidated with a felony charge under N.C. Gen. Stat. § 15A-926 (2005)).

As defendant recognizes, this Court held otherwise in *State v. Priddy*, 115 N.C. App. 547, 550, 445 S.E.2d 610, 612 (holding that a superior court erred in dismissing defendant's habitual DWI charge for lack of jurisdiction), *disc. review denied*, 337 N.C. 805, 449 S.E.2d 751 (1994). Defendant contends, however, that the subsequent case of

*State v. Vardiman*, 146 N.C. App. 381, 552 S.E.2d 697 (2001), *cert. denied*, 537 U.S. 833, 154 L. Ed. 2d 51, 123 S. Ct. 142 (2002), implicitly overruled *Priddy* because it described habitual DWI as a recidivist offense. One panel of the Court of Appeals may not, however, overrule another panel. *In re Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989).

In any event, *Vardiman* in fact reaffirms *Priddy's* holding that "[h]abitual impaired driving is a substantive offense[,]" not a status offense as defendant would prefer. *Vardiman*, 146 N.C. App. at 384-85, 552 S.E.2d at 700. The mere fact that a statute is directed at recidivism does not prevent the statute from establishing a substantive offense. Defendant "concedes that if this Court determines that the habitual DWI statute creates a substantive offense, then the Superior Court possessed jurisdiction to try him on the misdemeanor offenses set out in the same indictment with the habitual DWI charge."

No error.

Judges HUNTER and McCULLOUGH concur.